In the Matter of the Application of EDWARD LINDGREN for
a Determination of the Sufficiency of the Certificate for a
Certificate of Nomination of BENJAMIN GITLOW for the
Workers' League Nomination for the Office of Mayor of the
City of New York and the Certificate of Nomination of
HARRY WINITSKY for the Workers' League Nomination for
the Office of President of the Board of Aldermen of the City
of New York.

THE BOARD OF ELECTIONS OF THE CITY OF NEW YORK,
Appellant; BENJAMIN GITLOW and HARRY WINITSKY,
Respondents.

First Department, October 24, 1921.

Elections — certificate of nomination — power of board of elections
with respect to receiving and filing certificates of nomination is
wholly ministerial — board of elections of city of New York justi-
fied in refusing to print respondents' names as candidates for
mayor and president of board of aldermen where nominees were
serving sentences for felony in Sing Sing Prison — Constitution,
article 2, § 3, not applicable to residence of candidate for office —
mandamus to compel board to place names on ballots — clear
legal right to relief sought must be shown — respondents had no
right to hold office — courts do not lend aid to accomplishment
of things that are absurd and wrong.

The power of the board of elections with respect to the receiving and filing
of certificates of nomination is now wholly ministerial, but the duty of
executing the election laws is expressly enjoined upon the board by
section 190 of the Election Law, and it should refrain from acting on a
certificate that is invalid on its face.

Accordingly, the board of elections of the city of New York was justified
in refusing to place the names of candidates for the offices of mayor and
president of the board of aldermen upon the official ballots for the general
election of November 8, 1921, where it appeared from the original certifi-
cate filed that they were inmates of Sing Sing Prison serving a sentence for
a felony, and were, therefore, disqualified to hold office.

The fact that a second certificate recited addresses in the city of New York
did not cure the defect where the change was not made because of error;
but because it was believed that under article 2, section 3, of the New
York Constitution the nominees had neither gained nor lost a residence
while confined in any public prison, for said section of the Constitution
has no application to the residence required of a candidate for office.

A clear legal right to the relief sought must be shown on an application for
a mandatory order requiring public officials to act.

The respondents have no right to hold the offices for which they would seek the suffrage of citizens as they have been convicted of criminal anarchy and are confined in a State prison.

Courts will not lend aid to the accomplishment of an absurd thing, and where it appears that the relief sought is not to secure a legal right, but to accomplish a wrong and compel the doing of an act that would be of no avail, judicial sanction will be withheld.

CLARKE, P. J., dissents.

APPEAL by the Board of Elections of the City of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of October, 1921, granting petitioner's motion to compel said board of elections to print upon the ballot for the 1921 election respondents' names as candidates of the Workers' League Party for the offices of mayor and president of the board of aldermen, respectively.

*Russell Lord Tarbox* of counsel [*George P. Nicholson* and *John F. O'Brien* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellant.

*Joseph R. Brodsky*, for the respondents.

PAGE, J.:

On the 4th day of October, 1921, there was filed with the board of elections of the city of New York a certificate of nomination wherein candidates were nominated for various offices to be filled at the next general election, on behalf of the Workers' League. In this certificate Benjamin Gitlow was nominated for the office of mayor, and Harry Winitsky for the office of president of the board of aldermen, of the city of New York. It was recited in the certificate that the residence of each of these individuals was Sing Sing Prison, Ossining. The board of elections refused to place the said names on the official ballot for the reason that the persons named as candidates for those two offices are now inmates of the State prison and disqualified under the provisions of section 3 of the Public Officers Law. Notice was given to the committee designated in said certificate to fill vacancies, and on October 13, 1921, a second certificate was filed by the said committee with the board of elections, purporting to nominate the same individuals for the said offices, giving addresses in the city of New York. The board of elections refused to print these

names and this proceeding was brought for an order declaring the certificate filed by the committee on vacancies valid, sufficient and legal, and directing the board of elections of the city of New York to place the names of Benjamin Gitlow as a candidate for the Workers' League nomination for the office of mayor of the city of New York, and Harry Winitsky as candidate for the Workers' League nomination for the office of president of the board of aldermen of the city of New York, upon any and all of the official ballots to be used in said city at the general election to be held on November 8, 1921. The learned justice at Special Term granted the order on the ground that the board of elections was wholly without power to reject the amended certificate, and further stating: " It is shocking and absurd that these candidates should be permitted to have their names printed on the official ballots, but in the present state of the law our courts seem to be powerless to prevent such an outrage upon decency."

It is well settled that the power of the board of elections with respect to the receiving and filing of certificates of nomination is now wholly ministerial. Nevertheless, as we stated in *Matter of McGrath* (189 App. Div. 140, 146), the duty of executing the election laws is expressly enjoined upon the board by section 190 of the Election Law (as amd. by Laws of 1919, chap. 369). Therefore it is its duty to " refrain from acting upon a certificate which is invalid on its face; but the board has no judicial power to investigate or decide with respect to the validity of such a certificate depending on matters *dehors* the record." The original nominating certificate disclosed the fact that the two persons designated as candidates were inmates of the Sing Sing State prison; it follows that they have forfeited all their civil rights. (Penal Law, § 510.) The change of residence stated in the second certificate was not made because of any error in the statement of the place of confinement, but because it was believed that under article 2, section 3, of the New York State Constitution the nominees had neither gained nor lost a residence while confined in any public prison. That section is limited by the first words of the section, " For the purpose of voting," and has no application to the residence required of a candidate for office. (Pub.

Off. Law, § 3.) In my opinion, upon the certificates filed with them the board of elections was justified in refusing to print the names on the official ballots. This is not a case where the disqualification must be determined by matters *dehors* the record.

If, however, the board of elections did not refuse properly to place the names upon the ballot, it would not follow that the court must grant the order for which the petitioner asks.

It is conceded that Gitlow and Winitsky were convicted of criminal anarchy and sentenced to State prison and that their term of imprisonment will not expire until after January 1, 1922. These convictions were had in the Supreme Court of New York county. The conviction of Gitlow was affirmed in this court. (*People* v. *Gitlow*, 195 App. Div. 773.) It, therefore, appears that the two nominees are disqualified. When a person applies to the court for a mandatory order requiring public officials to do an act, it is incumbent on him to show not only the failure of the officials to act but that he has a clear legal right to the relief sought. Here it appears without question that the nominees have no right to hold the offices for which they would seek the suffrage of the citizens. It is not to secure or protect a legal right, but to accomplish a wrong and to compel the doing of an act that would be of no avail. In *People ex rel. Sherwood* v. *Board of Canvassers* (129 N. Y. 360) on the face of the returns Sherwood was elected a State Senator. The State Board of Canvassers refused to issue a certificate of election on the ground that he was disqualified from holding the office. The court held that the Board of Canvassers was a ministerial body and clothed with no authority to determine the question of his eligibility and that the Senate alone could determine that question. Nevertheless, the court said: " Here the relator comes into court and asks its aid to clothe him with apparent title to an office, and by its affirmative action, to remove obstacles which stand in his pathway in his proposed intrusion into the office; and upon the undisputed facts, the court is able to see that he is ineligible, and it simply determines that it will not aid him; * * *. We would have substantially the same question before us if some elector of the 27th Senatorial district had been the relator in this case instead of Sherwood. The same

line of reasoning which I have used would answer his application for a mandamus." (P. 373.)

The court is not powerless; it will not lend its aid to the accomplishment of an absurd and foolish thing. Any one desiring to throw away his vote on candidates ineligible for these offices may do so by writing their names in on the ballot. No one who is entitled to vote is debarred from fully exercising that right. But the court will not give its judicial sanction to the presentation of a candidate for an office that he is absolutely disqualified from holding.

The order should, therefore, be reversed and the motion denied.

DOWLING, SMITH and GREENBAUM, JJ., concur; CLARKE, P. J., dissents.

Order reversed and motion denied.