In the Matter of the Application of EDWARD LINDGREN, Appellant.

THE BOARD OF ELECTIONS OF THE CITY OF NEW YORK, Respondent.

Elections — questions as to validity or legality of certificates of nomination must be determined in first instance by Supreme Court or county judge — when board of elections acts ministerially — prison convict who cannot hold office if elected cannot be nominee — Special Term or Appellate Division in exercise of discretion may deny application for mandamus to compel the printing of names of convicts upon ballot as nominees for public office.

1. When certificates of nomination are filed with the board of elections and are regular upon their face, any question regarding their validity or legality must be determined in the first instance by the Supreme Court or county judge. For the purpose of filing the certificates of nomination and placing the names of nominees upon

the official ballot, the board of elections acts ministerially. If for· any reason not appearing upon the papers the certificate is insufficient, illegal or invalid and the names of the nominees should not be placed upon the official ballot, a direction to this effect should first be made ·by the Supreme Court or the county judge.

2. A person to be nominated under the Election Law must be one who, at the time of his election, can take and hold his office and it is not contemplated that a prison convict, who could not hold the office if elected, can be a nominee.

3. Where it appeared to the Special Term or the Appellate Division that certain nominees were incarcerated in state prison for a felony and that their terms extended beyond election day, these courts in the exercise of discretion could deny an application for a writ of mandamus compelling the board. of elections to place their names upon the official ballot.

*Matter of Lindgren,* 198 App. Div. 319, appeal dismissed.

(Argued October 27, 1921; decided October 28, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 24, 1921, which reversed an order of Special Term granting a motion to compel the board of elections of the city of New York to print the names of certain nominees of the Workers' League party on the official ballot and denied said motion.

*Walter H. Pollak, Joseph R. Brodsky, Walter Nelles* and *Murray C. Bernays* for appellant. The certificates nominating Gitlow and Winitsky comply with the requirements of the Election Law. (*People* v. *Cady,* 143 N. Y. 100; *Matter of McGrath,* 189 App. Div. 140.) The petitioner has a clear legal right to the relief sought. (*People ex rel. Sherwood* v. *Bd. of Canvassers,* 129 N. Y. 360; *Matter of Independent Nomination,* 186 N. Y. 266.)

*John P. O'Brien, Corporation Counsel (John F. O'Brien, George P. Nicholson* and *Russell Lord Tarbox* of counsel), for respondent. The certificate of October 4, 1921, was not only irregular on its face, but was, in substance, wholly void. It is the duty of the board of elections to reject as wholly void a certificate nominating a person for

public office who, on the conceded facts, is known by the board to be incapable to compete as a candidate and to be disqualified to hold the office for which he is nominated. (Public Officers Law, § 3; Penal Law, §§ 2, 510; Election Law, § 175; *People ex rel. Sherwood* v. *Bd. Canvassers,* 129 N. Y. 360; *People* v. *Purdy,* 154 N. Y. 439; *Matter of Murphy,* 189 App. Div. 135; *Matter of McGrath,* 189 App. Div. 140.)

CRANE, J.   Section 3 of the Public Officers Law (Cons. Laws, ch. 47) provides that no person shall be capable of holding a civil office who shall not at the time he shall be chosen thereto be of full age, a citizen of the United States and a resident of the state.

Section 510 of the Penal Law reads as follows:  " A sentence of imprisonment in a state prison for any term less than for life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the persons sentenced."

Benjamin Gitlow, residing at Sing Sing Prison, Ossining, New York, and Harry Winitsky, ·a resident of the same place, were named for the Workers' League by certificate filed with the board of elections, the one for mayor of the city of New York and the other for president of the board of aldermen.   The board of elections refused to place the names upon the official ballot for the reason that the nominees were disqualified under the above provisions of law.   Thereafter and within the time allowed by section 135 of the Election Law, the committee upon vacancies of the Workers' League filed a certificate with the board of elections wherein Benjamin Gitlow and Harry Winitsky were again named for the respective offices, the residence of the former being given as 46 Greenwich avenue and that of the latter as 1079 Simpson street.

There was nothing upon the certificate of nomination

or the certificate filling the vacancies or curing defects to show to the board of elections that the two nominees were felons serving terms in a state prison. This fact was gathered by the board from other sources and used as a basis for rejecting the certificates.

Right here the question arises as to whether or not the board has a discretion in such matters or whether it performs merely a ministerial duty, and must file all papers required by the Election Law when regular upon their face.

By chapter 909 of the Laws of 1896, section 65, objections to certificates of nomination are to be filed within three days after the filing of the certificate, and by section 56 the legality of the certificate is to be determined in the first instance by the officer with whom the certificate of nomination is filed. His determination may thereafter be reviewed summarily by the Supreme Court. This law was repealed by chapter 649 of the Laws of 1911 which made a change in the procedure by providing that objections to any certificate of nomination or any question arising with reference to its validity should be determined upon the application of any citizen to the Supreme Court or the county judge. It seems quite apparent, therefore, that when certificates of nomination are filed with the board of elections and are regular upon their face, any question regarding their validity or legality must be determined in the first instance by the Supreme Court or county judge. For the purpose of filing the certificates of nomination and placing the names of nominees upon the official ballot, the board of elections acts ministerially. If for any reason not appearing upon the papers the certificate is insufficient, illegal or invalid and the names of the nominees should not be placed upon the official ballot, a direction to this effect should first be made by the Supreme Court or the county judge. (*Matter of Murphy*, 189 App. Div. 135; *Matter of McGrath*, 189 App. Div. 140; Saxe's Manual of Elections, p. 220.)

The board of elections having refused to act upon the certificates of the committee to fill vacancies and having refused to place the names of Gitlow and Winitsky upon the official ballot, application was made to the Supreme Court for a writ of mandamus to compel the board to reverse its action. It then appeared for the first time beyond contradiction that both the alleged nominees are inmates of a state prison, convicted of felonies under sentences not expiring until after election day.

Under the provision of law, above referred to, both these men will be disqualified from holding office, if elected. It seems hardly reasonable to suppose that the Election Law, providing for nominations by primary and by petition and ballots at public expense, authorized the nomination of a person disqualified from holding public office and for whom all votes would be of no avail. It was held in *People ex rel. Sherwood* v. *Board of Canvassers* (129 N. Y. 360) that a park commissioner of the city was ineligible to hold office under the Constitution of the state of New York as it was at that time, providing that " No person shall be eligible to the legislature, who at the time of his election, is, or within one hundred days previously thereto has been, a member of congress, a civil or military officer under the United States, or an officer under any city government." It was said by the court: " the term ' eligible ' relates to the capacity of holding, as well as to the capacity of being elected to the office.  *  *  *  Therefore, he (the relator) could not be elected to or hold the office of senator. He violated the constitutional provision in seeking the votes of the electors, and they violated it in voting for him. As a matter of constitutional law, any certificate the appellants could issue to him would be an absolute nullity, and the only use he could make of it would be to violate the constitution and do a wrong by intrusion into an office which he has no right for one moment to hold." (p. 369.)

Now it is said that these nominees could not be elected; that if elected by a sufficient number of votes, they could not hold office but that there is nothing in the Election Law (Cons. Laws, ch. 17) that prevents their nomination. I do not find that there is a specific provision in the Election Law that a state prison convict cannot be nominated for office, but it does seem reasonable to suppose that the election machinery, which is run at such a great expense to the public, is for the purpose of doing a useful and not a useless thing. If all the votes cast for a state prison convict were void or, in other words, if he could not take the office even though receiving a majority of the votes, what object can there possibly be in nominating him? A person to be nominated under the Election Law must be one who, at the time of his election, can take and hold his office. Neither of these nominees, if elected, could hold office.

The law has provided extensive machinery to insure honest elections and proper office holders. Primaries are now conducted with all the formality of elections and both are at public expense. In the city of New York the primaries are under the control and management of the board of elections. Voters may now be enrolled in the various parties, the enrollment books being kept by the board of elections which must publish at public expense a transcript thereof. There is printed the official primary ballot and the election officials who participate in the primaries are obliged to take and subscribe the constitutional oath of office. No one can vote at a primary unless he be enrolled and qualified to vote on election day.

By section 122 independent nominations may be made by filing a certificate signed and acknowledged by the requisite number of electors. The certificate must be accompanied by the oath of the signer that it is his intention to support at the polls the candidacy of the person nominated. If the signatures are witnessed, the

witness takes the oath and in that case the candidate must certify to the good character and honesty of the witness. Section 127 says: " Such certificates of nomination of candidates for offices *to be filled* only by the voters or a portion of the voters of the city of New York shall be filed with the board of elections of the city of New York."

Surely this does not contemplate the filing of a certificate for a candidate who could not fill the office. By section 130 the board of elections of the city of New York must publish in the newspapers of each borough the list of nominations of candidates which must contain the name, residence and place of business of the candidate. This provision is hardly consistent with the nomination of a state prison convict. By section 133 if the nominee declines to run he must so signify in writing duly acknowledged and file it with the board. Objections to independent certificates of nomination may be filed, whereupon notice must be given to the candidate. By section 440 the board of elections shall transmit by mail certificates of election to persons elected and by sections 541 and 546 candidates within twenty days after election must file a certified statement of their expenses and disbursements.

How can a man who has been deprived of all his civil rights and all authority and powers comply with these provisions of the Election Law? In view of the development of our election laws, of the many details covered by it and the public expense involved, it surely cannot be contemplated that a prison convict can be a nominee when he cannot hold the office if elected. It is reasonable to suppose that if persons participating in the nomination at the primary or by independent nomination must be those qualified to vote on election day, the nominee should be one qualified to hold office if elected.

We must not forget that what the relator seeks here

5

is the placing of the names of the two nominees upon the official ballot which is to be prepared by paid public officials, advertised and printed at public expense. Any elector on election day can vote for them anyhow irrespective of the official ballot, that is, he can write in the name of a state prison convict or a dead man, if he pleases, so that the rights of electors are in no way interfered with by denying this application.

Even if some may disagree with me in my views of this matter, yet we are all agreed that when it appeared to the Special Term or the Appellate Division that the two nominees were incarcerated in a state prison for a felony and that their terms extended beyond election day, these courts in the exercise of discretion could deny the application for a writ of mandamus compelling the board of elections to place their names upon the official ballot.

The appeal to this court should, therefore, be dismissed, without costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and McLAUGHLIN, JJ., concur; ANDREWS, J., not voting.

Appeal dismissed.