In the Matter of MILES F. McDONALD et al., Petitioners, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, October 17, 1949.

*George Rosling* for petitioners.

*Benjamin Heller* for Edmund H. H. Caddy, respondent.

*Victor Rabinowitz* for Max Torchin and others, respondents.

Di Giovanna, J.  Petitioners seek, by two separate proceedings which have been consolidated and heard together, to have declared invalid all proceedings taken by the 1947 executive committee of the American Labor Party at its meeting of September 16, 1949, in connection with nominations hereinafter described and a declination and certificates filed thereafter with the board of elections in connection therewith, and also to have declared invalid documents filed with the board of elections by mail on September 29, 1949, similarly relating to such nominations and declination.  In connection with such proceedings, respondents have prayed for cross relief.

Respondents' preliminary objections are overruled.  Petitioners are authorized to bring these proceedings (Election Law, §§ 145, 330, subd. 2; *Matter of Rudd* v. *Marchetti,* 278 N. Y. 698, affg. 255 App. Div. 724; *Matter of Bergen* [*Cohen*], 262 N. Y. 717; *Matter of Berman* v. *Heffernan,* 295 N. Y. 593; *Matter of Brook* v. *Cohen,* 169 Misc. 369).  Objections were timely filed within three days of the receipt by the board of elections of the documents mailed September 17, 1949 (Election Law, § 143, subd. 11; § 145).  In any event, petitioners, as candidates aggrieved and as chairman of a committee defined in section 2 of the Election Law, may bring these proceedings without prior filing of objections (Election Law, § 330, subd. 2; *Matter of Trosk* v.

*Cohen,* 149 Misc. 298, affd. 240 App. Div. 825, affd. 262 N. Y. 430; *Matter of O'Connor [Babcock],* 180 Misc. 630; *Matter of Sposato [Graham],* 180 Misc. 933; *Matter of Perri [Cohen],* N. Y. L. J., March 14, 1940, p. 1182, col. 1, CUFF, J.).

One Daniel Lapidus, American Labor Party designee for nomination for Member of Congress, 10th Congressional District, Kings County, died September 2, 1949. His candidacy was unopposed, so that he received a plurality of the votes cast on primary day, September 6, 1949. In consequence, the American Labor Party was authorized to nominate another candidate or fill the vacancy, as provided by law for filling vacancies (Election Law, §§ 140, 142). At the same primary election, the American Labor Party elected its county committee for Kings County. The term of the predecessor county committee, elected in 1947, expired with the election of such successor county committee (Election Law, §§ 13, 15; *Matter of Torchin* v. *Cohen,* 286 N. Y. 544).

On September 9, 1949, a letter of notification that there would be a meeting of the " County Executive Committee " on September 16, 1949, was sent over the signatures of respondent Linder, as chairman, and one Ingersoll, as cochairman, to 113 persons. Of these persons, it appears that some 45 were members of record of the executive committee of the 1947 county committee, but 13 members of such executive committee were not notified. The status of the remaining 68 so notified is not clear. While there is general testimony that death, removal, resignation and lack of activity caused vacancies in the executive committee, the lack of record and casualness of procedure leave uncertain whether those not so notified had in fact ceased to be members of the executive committee.

The letter advised the recipients that the meeting would propose a nominee to be named by the judicial convention which would be held immediately following the executive committee meeting the same evening; also, that it would pass on the slate of officers and members of the county executive committee to be proposed at the county committee convention to be held on September 20, 1949. No inkling was given in the letter that any other matter would be taken up by the executive committee.

Shortly before the hour of the meeting on September 16, 1949, Linder learned that respondent, Caddy, then the Republican nominee for the office of District Attorney, Kings County, was interested in the possibility of obtaining the American Labor Party nomination for such office. Respondent, Torchin, was, at the time, the American Labor Party nominee for District Attorney.

The executive committee meeting commenced at about 8:00 p.m. and was presided over by Linder. There were about eighty-one or eighty-two persons present. No roll was called, but Linder claims to have recognized those in attendance as members of the 1947 executive committee. At the opening of the meeting, Linder announced an agenda which did not include any matter relating to Caddy's nomination. At about 9:00 p.m., the executive committee recessed for the purpose of holding the judicial convention, which was held and lasted until about 10:00 p.m. At about 9:30 p.m., while the judicial convention was in progress, Caddy arrived and met with Linder in another part of the meeting place. At 10:00 p.m., when the interrupted meeting of the executive committee was resumed, Linder informed those in attendance of the proposal to name Caddy for District Attorney. This was the first suggestion to the executive committee that such action was to be taken at the meeting. Moreover, a number of members of the executive committee who had been notified of the meeting by the letter in question were not in attendance.

Following Linder's announcement, the following steps were taken: Torchin was nominated for Member of Congress to fill the Lapidus vacancy, whereupon he announced his acceptance of the nomination tendered, and the declination of his nomination as American Labor Party candidate for District Attorney; Caddy was then nominated for the place vacated by Torchin, and announced his acceptance. The following day, September 17, 1949, the several documents evidencing such procedures were mailed to the board of elections, being postmarked that day and stamped as received by such board on September 19, 1949.

These documents were the subject of the objections filed with the board of elections on September 22, 1949, and of the first proceedings initiated in this court by petitioners for their invalidation. It is clear under established authority, and the court so finds, that the executive committee of the 1947 county committee had no power to act in any respect once the term of office of the county committee, of which it was a subcommittee, expired (*Matter of Torchin* v. *Cohen*, 286 N. Y. 544, *supra*). It is also clear that the meeting of September 16, 1949, was not even a duly convoked and properly constituted meeting of such executive committee authorized to make the nominations and accept the declination which are the subject of attack herein.

On September 20, 1949, the organization meeting of the 1949 county committee convened. Rules were adopted, including provision for an executive committee of 120 members. The

officers and a part of the membership of such executive committee were elected. The completion of the roster of the executive committee was reserved for later action. Such rules and a schedule of the officers and partial membership of the executive committee were thereafter filed with the board of elections, as required by section 15 of the Election Law. It is respondents' claim that at this organization meeting of the 1949 county committee, the proceedings taken on September 16, 1949, by the executive committee respecting the Caddy-Torchin nominations were ratified. Such approval is claimed to have been accomplished by the adoption by the county committee at such organization meeting of a lengthy "Statement of Policy" containing the following language: "We have endorsed four Republicans for judgeships and a Republican-Fusion candidate for the office of District Attorney. *We hereby ratify and approve the action taken by our party in tendering such endorsements.*" (Italics furnished.) The statement which had been prepared by the publicity director of the American Labor Party was in mimeographed form with the exception of a few penciled interlineations. The italicized portion of the excerpt quoted was one of these penciled interlineations.

Such attempted ratification, if such in fact it was, is of no legal force. The actions of the 1947 executive committee were wholly void. It was not "such other committee as the rules of the party may provide", authorized to fill vacancies in nomination (Election Law, § 140). The only such committee so authorized by the rules of the 1949 county committee was its own executive committee.

The purported ratification, moreover, did not include a ratification of the nomination of Torchin to fill the Congressional vacancy. Without a valid nomination to such office, Torchin had no statutory right to decline his nomination as District Attorney (Election Law, § 139).

The declination by Torchin of the nomination for District Attorney, which he had received at the primary, to be effective, was required to be made not later than September 17, 1949, (Election Law, § 314, subd. 14) and filed by September 20, 1949, (§ 314, subd. 9). Reference to the statutory history of subdivision 14 of section 314 of the Election Law serves both to clarify its rather cumbersome phrasing and to establish that it has been the settled policy of the Legislature since 1924, at least, to bar persons who have received nominations at primary elections from thereafter declining those nominations except in the special circumstance of their having received nomination to

other office, and then only during a very brief period following the primary. After such interval had passed, a primary nominee, being forbidden to decline, is no longer available as a candidate to fill vacancies in any other office. From 1913 to 1924, moreover, one who had received a primary nomination had *no* right thereafter to decline under any circumstances. In the following enumeration of legislative enactment or amendment, the section indicated is that found in the Election Law and numbered for the year affected. (L. 1911, ch. 891, § 50; L. 1913, ch. 820, § 50; L. 1924, ch. 30, § 138; L. 1929, ch. 712, § 138; L. 1934, ch. 918, § 138.)

Had the 1949 county committee itself made the nominations of Caddy and Torchin, and accepted the latter's declination on September 20, 1949, when it met, and at once filed the certificates evidencing such action with the board of elections, its action would have been taken too late. The purported ratification cannot have the effect of validating void proceedings and void certificates already filed with the board of elections, which were untrue as matter of record in their recital that they constituted action by the executive committee of the county committee, a committee as yet not even convened for organization. Proceedings under the Election Law must be taken within the times limited therein. Papers may not be filed or errors corrected *nunc pro tunc* (*Matter of Reis* v. *Cohen*, 240 App. Div. 854, affd. 262 N. Y. 705; *Matter of Bissell*, 245 App. Div. 395; *Matter of McCurn*, 245 App. Div. 905).

Nor does the court in this instance, even if it possessed the power to grant such relief, hold that respondents are entitled to any such relief on the basis of the purported ratification. The proceedings of the county committee at its organization meeting, other than the rules adopted and officers and members of the executive committee elected, are not noted in any documents filed with the board of elections, nor is it claimed by respondents that the act of ratification appears in a minute of the meeting or in any form other than the penciled interlineation on the mimeographed " Statement of Policy ". Such brief note describes but does not name the candidates affected and, what is even more significant, purports to ratify " the action taken by our *party* in tendering such endorsements " (Italics furnished). The interlineation is too informal and indefinite in its intent, appearance and origin, and the statement wherein it appears is a document of too private a custody to warrant any relief being accorded the respondents on the basis thereof. It is intended that the authority of the nominating group should be a matter

of public record, and not that an unauthorized certificate of nomination, whose invalidity is a matter of public record, should have a secret or private basis of validity.

The petition, seeking the invalidation of all proceedings taken by the 1947 executive committee at its meeting of September 16, 1949, in connection with the Caddy-Torchin nominations, and the latter's declination, and the certificates filed with the board of elections on September 19, 1949, by mail delivered that day, is granted. Accordingly, it is unnecessary to consider the further objections to the sufficiency of the Caddy nominating certificate based upon claimed failure to append thereto his consent, as required by section 140 of the Election Law.

The steps taken by the executive committee at the meeting of September 28, 1949, after petitioners commenced their first invalidation proceeding, are likewise legally ineffective to nominate Caddy for District Attorney and Torchin for Member of Congress. It has already been demonstrated that the Torchin declination could not have been validly made after September 17, 1949, nor filed after September 20, 1949.

As hereinbefore pointed out, the court is without power to authorize the taking of proceedings or the filing of certificates *nunc pro tunc*, nor should it here as a matter of discretion, if that power rested within it, direct that the deficiencies and illegalities be waived and that the papers be accepted by the board of elections as though the steps were timely and properly taken. In the court's view, the respondents could not but have known that the proceedings taken on September 16, 1949, were, in their most favorable aspect, so taken by a body wholly without authority to act in the matters undertaken. Their knowledge was derived from the decision in the case of *Matter of Torchin* v. *Cohen* (286 N. Y. 544, *supra*) wherein the respondent of that name, who appears herein, was himself the plaintiff and an attorney in his own behalf. What is more, Torchin persuaded the majority of the Court of Appeals to render its decision that an executive committee could not hold over beyond the life of its county committee, even though a provision in its rules authorized such extended tenure. In the present case, it appeared, by his own acknowledgment at the hearing, that Torchin was the legal adviser of the American Labor Party and prepared the minutes of the meeting of September 16, 1949, as well as all the certificates of nomination, declination and acceptance that were filed thereafter on September 19, 1949. Accordingly, the court finds that when Torchin entitled the minutes as those " of a duly convened Executive Committee meeting of the Kings County

American Labor Party held   *   *   *   September 16, 1949 '', and throughout the other documents interspersed references of like import without once indicating that the group meeting, if an executive committee at all, was the executive committee of the expired county committee elected in 1947, he did so with the view and in the hope of leading interested persons inspecting these filed documents to assume that the executive committee mentioned was in fact a subcommittee of the 1949 county committee.

The court is equally justified in concluding that the respondent, American Labor Party, and its officers had originally no intention of filling the vacancy in the Congressional nomination; otherwise notice of such contemplated action would have been incorporated in the letter of September 9, 1949, calling the meeting of September 16, 1949. Were it not for the project of indorsing Caddy, the Congressional vacancy would have been left unfilled. The county committee could readily have been convened in time to take proceedings to effect lawful nominations. Not its size, nor any uncertainty as to its membership — for there were no contested seats — precluded an earlier convening of the county committee. It was the eleventh hour development of the Caddy situation after notice had already been sent out for the meeting of September 20, 1949, that compelled respondents to rely on action by the 1947 executive committee. Recourse to action by a defunct executive committee was not a blunder, but a conscious and planned illegality on the part of the respondent, American Labor Party, and its officers, in which the court is satisfied Caddy had no part. In such circumstance, the respondents are not entitled to relief (*Matter of Reis* v. *Cohen,* 240 App. Div. 854, affd. 262 N. Y. 705, *supra; Matter of Bissell,* 245 App. Div. 395, *supra; Matter of King,* 155 App. Div. 720; *Matter of Swarthout,* 76 Misc. 24).

The second of the invalidating proceedings directed against the documents filed with the board of elections by mail on September 29, 1949, is accordingly sustained, and the relief prayed for by respondents by way of cross petition to declare valid the documents just mentioned is denied.

Therefore, it is the court's further conclusion that Torchin continues to be the candidate of the American Labor Party for the office of District Attorney and that he has not been validly named by said party to fill the vacancy in the Congressional nomination caused by the death of Lapidus.

Submit order.