In the Matter of LUKE A. BURNS, Appellant, against MILTON A. WILTSE, Respondent, and MANFORD H. JEROME et al., as Commissioners of Election of Jefferson County, et al., Respondents.

Argued November 2, 1951; decided November 2, 1951.

*Borden H. Mills* for appellant. I. Even though there is no specific provision in the Election Law forbidding a person from running for two public offices at the same election, such prohibition is implicit in said law, and to permit a person's name to appear on the ballot for two county offices, particularly when they are incompatible, would constitute a fraud on the electorate. (*Matter of Lindgren,* 232 N. Y. 59; *People* v. *Purdy,* 154 N. Y. 439; *Matter of Ryan,* 172 Misc. 105, 257 App. Div. 1068.) II. The order appealed from is contrary to the spirit and intent of the Election Law. (*Matter of McCall,* 289 N. Y. 104; *People ex rel. Furman* v. *Clute,* 50 N. Y. 451.) III. Petitioner is a " candidate aggrieved " within the meaning of the applicable statute. (*Matter of Dimentstein [Frankle],* 184 Misc. 126, 255 App. Div. 722; *Matter of Broderick* v. *Knott,* 197 Misc. 114, 276 App. Div. 960, 301 N. Y. 723.)

*Lawrence Conboy* for Milton A. Wiltse, respondent. I. Petitioner is not a " candidate aggrieved " within subdivision 2 of section 330 of the Election Law. (*Matter of Lanni* v. *Grimes,* 173 Misc. 614; *Matter of Harvie,* 122 Misc. 669; *Matter of Corn* v. *Cohen,* 181 Misc. 832, 267 App. Div. 891; *Matter of Dillon* v. *Roberts,* 193 Misc. 6; *Matter of Deitz,* 87 Misc. 610, 165 App. Div. 298, 214 N. Y. 216; *Matter of Dimentstein [Frankle],* 184 Misc. 126, 255 App. Div. 722; *Matter of Dolphin,* 240 N. Y. 89.) II. Respondent is entitled to be nominated as County Judge and District Attorney on the same ballot. III. Dual nominations for incompatible offices do not contravene public policy. IV. The common law permits dual nominations for incompatible offices on one ballot. (*Misch* v. *Russell,* 136 Ill. 22; *State* v. *Waechter,* 332 Mo. 574; *Matter of Maxman,* 49 Pa. D. & C. 141.) V. Under section 411 of the County Law, respondent is eligible for the

nomination to the office of County Judge. (*Matter of Clancy* v. *Sloan*, 273 N. Y. 152.)

*Laurence H. Kissel, County Attorney,* for Commissioners of Election of Jefferson County, respondents.

DYE, J.  At the 1951 fall primary the Republican, Democratic and Liberal parties in Jefferson County nominated Milton A. Wiltse, Esq., as their candidate for the office of District Attorney.  At the same primary the Republican and Democratic parties also nominated Hon. Crandall F. Phillips as their candidate for the office of County Judge of Jefferson County.  Thereafter and on October 16, 1951, Judge Phillips died.  On October 23, 1951, the Republican County Committee duly met to fill the vacancy thus created (Election Law, § 140; County Committee rules as filed with the Secretary of State, October 5, 1947).  The names of Milton A. Wiltse and Luke A. Burns, the petitioner herein, were presented for consideration.  A vote was taken and Mr. Wiltse won by vote of 133 to 51.  Prior to the filing of the certificate of nomination, the defeated aspirant Burns initiated the within proceeding by the filing of a petition in which he sought to permanently restrain the officers of the Republican County Committee from filing a certificate of nomination of the said Wiltse as Republican candidate for the office of County Judge of Jefferson County, and to restrain the Commissioners of Election of Jefferson County from receiving and filing the said certificate and for an order directing the Republican County Committee to reconvene and nominate some person who " if elected, may qualify as such county judge and who is a proper person for whom votes may be cast at the said election for the said office in accordance with the spirit and intent of the election law ".

We are agreed that the petitioner, having been considered at the meeting of the County Committee to fill the vacancy, is properly before the court as an aggrieved party even though he did not file written objections (Election Law, § 145), for indeed he could not as the certificate of nomination had not as yet been filed (Election Law, § 140), and even though everyone concedes the action taken by the committee was done in good faith, free from fraud and irregularity (Election Law, § 330. subd. 2).

This leaves for review the sole question of whether or not the said Wiltse may also at this time be nominated as a candidate for the office of County Judge of Jefferson County, or to state it in the abstract, whether a person otherwise qualified to hold either one of the two offices is entitled to have his name on the same ballot for both offices.

We find no specific constitutional or statutory authority that prohibits or permits the nomination of the same person as a candidate for the office of District Attorney and County Judge at the same election. Nonetheless, we are convinced that the spirit and intent of the Election Law forbids such a dual nomination particularly when, as here, the candidate may not, if elected, take and hold both offices (County Law, § 411).

The candidate Wiltse, by force of circumstances is in a difficult position. He may not relieve himself of his obligation to run for the office of District Attorney. Mere saying that he does not intend to qualify for such office, if elected, is no solution. His name is on the ballot as the candidate of all political parties for such office. It may not now be removed as the time for declination fixed by the Election Law expired on September 10, 1951. Nothing may now be done about it and he must run (Election Law, § 314, subd. 14; cf. *Matter of McDonald* v. *Heffernan,* 196 Misc. 465, affd. 275 App. Div. 1054, affd. 300 N. Y. 488). Being without opposition except for possible write-ins on election day, his election to that office seems a foregone conclusion.

Eligibility at the time of election as distinguished from qualification to take and hold office is not a new problem. It has been before us in a situation where certain individuals then confined in State prison with loss of civil rights, sought to have their names appear on the ballot as candidates for public office. Even though there was nothing in the Election Law prohibiting such nomination, we nonetheless held that such persons were ineligible on the general principle that an eligible nominee should be one qualified to take and hold office if elected, for, in the words of CRANE, J., it does " seem reasonable to suppose that the election machinery, which is run at such a great expense to the public, is for the purpose of doing a *useful and not a useless thing.*" (*Matter of Lindgren,* 232 N. Y. 59, 64; emphasis supplied.) In other words, an election under such

circumstances would be a futility. The principle thus enunciated is particularly apt in the present controversy. Wiltse as a dual candidate, may not legally qualify for both offices — one or the other must be abandoned but which one would depend upon the whim and option of the candidate without reference to the will of the people who voted for him. The desirability of applying such principle has been recognized in this court for a long time, although not heretofore decisive of a given case. We refer to *People* v. *Purdy* (154 N. Y. 439) which involves section 50 of chapter 569 of the Laws of 1890 (now with slight amendments in language, without change in substance, Town Law, § 23). The pertinent provision then being that "no * * * trustee of a school district * * * shall be eligible to the office of supervisor of any town ". The defendant Purdy while a school trustee was nominated for supervisor and was elected. His right to the office was challenged and on appeal we construed the statute as relating to eligibility to run for election rather than a disqualification for the holding of the office, as the latter impediment might be removed by an act of the candidate or the happening of an event, before actually taking office. The words of DENIS O'BRIEN, then an Associate Judge, spoken for the court are as pertinent now as they were then. We may read in the opinion (pp. 442–443) : " A public statute relating to the qualifications of public officers should never be so construed as to * * * promote a public mischief or to render the action of the voters at the election abortive. It should * * * be given such a construction as to enable the electors to act intelligently, and to accomplish * * * the purpose that they may have in view. If it be held that the disqualification * * * applies only to the holding of the office, and not to the capacity of the candidate for election, then the electors can never know when voting * * * for the office * * * whether they will succeed in filling the office or not. Though the action of the electors may be unanimous, the result must depend upon the future action of the candidate himself. Unless he resigns * * * there has practically been no election, and the office is left vacant, though the people intended to fill it. The vote in such a case may be said to be conditional upon the resignation of another office by the candidate voted for. He may refuse or fail to resign, and then the action of the voters is nugatory. * * *

" The statute * * * does not contemplate that a person who is disqualified to hold the office may, nevertheless, be lawfully elected upon the chance that subsequently he may, by his own act * * * remove the disqualification, and thus become entitled to fill it. The better rule is that the electors * * * must be confined to the selection of such persons only as are not then under any legal disqualification to exercise its powers * * * . The electors can then know that when the choice is made and legally declared the object for which the election was held has been accomplished, and that there is no legal obstruction in the way to prevent their will * * * from becoming effective."

Section 411 of the County Law, explicitly forbids a County Judge from holding another elective county office. This, we believe, renders a person ineligible as a candidate for County Judge if at the same election his name appears on the ballot as the validly nominated candidate for another county office inasmuch as the statute prevents his qualifying for both offices. To hold otherwise militates against a fundamental principle attendant upon the exercise of the election franchise, namely, the right of every citizen to vote " for all *officers* that now are or hereafter may be *elective by the people* ". (N. Y. Const., art. II, § 1; emphasis supplied.)

When the People adopted this constitutional provision to assure the full and effective exercise of the elective franchise we believe they intended that " *officers* * * * *elective* by the people " were those who at the time of election could, if elected, take and hold the office. In other words, that in the exercise of the election franchise the electors placed a limitation on the availability of candidates for public office to those persons who, if elected, could legally qualify to take and hold it (*Matter of Lindgren, supra; People* v. *Purdy, supra;* Abrahams' New York Election Law, p. 181; Gassman's Election Law, § 85, p. 355). Prohibition of a dual nomination is not a denial of the right of the electors to nominate persons of their own selection nor does it constitute interference with the functioning of the Election Law respecting nominations. Such a ruling is not disfranchisement yet that is exactly what would happen whenever electors vote for a candidate who may not legally qualify, if elected, to take and hold both offices to which he had been nominated (County Law, § 411). An elec-

tion under such circumstances would be illusory and sham if not an actual fraud upon the electorate and should not be permitted (cf. *Matter of Ryan,* 172 Misc. 105, affd. 257 App. Div. 1068).

The order of the Appellate Division should be reversed and the order of Special Term modified by directing that the meeting of the County Committee therein directed to be reconvened on October 29, 1951, be held at or before 10:00 A.M. on November 5, 1951, and as so modified, affirmed.

CONWAY, J. (dissenting). I regret that I cannot agree with my associates in the decision about to be made and the matter is so important that I feel I should state my views.

We must remember that the people — the electors — are the source of all power over matters dealing with the selection and election of their public servants. They determine what offices shall be filled, who shall be nominated for them and when and also for whom they shall have the opportunity and right to vote. They act through Constitution and statute.

The nomination of Mr. Wiltse for County Judge has been accomplished in strict conformity with statute and no one asserts the contrary in this proceeding. He is therefore legally entitled to his place upon the ballot for that office. To prevent the electors of Jefferson County from voting for him for County Judge on November 6th requires legislation and we as a court have not been granted the power to legislate under our constitutional concept of three co-ordinate branches of government.

The people-electors, after a political struggle, have determined that no one in this State may be elected District Attorney of a county or a County Judge, as a candidate of a political party unless the members of that party first select him as their nominee by their votes cast in a primary election. Pursuant thereto Mr. Wiltse was selected in the primary of the Republican party (and it is only with the primary of that party with which we need concern ourselves) to run for District Attorney, to succeed himself, on the Republican ticket. In the same manner Judge PHILLIPS was selected in the primary of the Republican party to run for election as County Judge but died subsequent to September 10th.

I note that in the dissenting opinion below and in the prevailing opinion here it is mentioned that Mr. Wiltse was nomi-

nated for District Attorney by the Republican, Democratic and Liberal parties. That was a fortuitous circumstance which should have no weight in our decision. It would have weight, of course, if we were making a decision applicable only when one of the candidates involved was nominated by three parties, but such is not the case. On the contrary we are deciding, for instance, that if the Republican party were to nominate a man in the city of New York for President of the City Council, no other party could nominate him for member of the city council since each office must be filled separately at the general election and one man may not occupy both offices. This is but one example, selected at random, of what may occur under the decision about to be made.

Considerable reliance is being placed upon the case of *Matter of Lindgren* (232 N. Y. 59, 61), where a *writ of mandamus* was sought to compel the Board of Elections to place upon the official ballot the names of two men as candidates for Mayor and for President of the Board of Aldermen of the City of New York while they were, to use the words of our opinion, " residing at Sing Sing Prison, Ossining, New York " as a result of convictions for felonies. Mandamus was refused by the Appellate Division as a matter of discretion. (198 App. Div. 319, 322.) It seems difficult to see that the decision in that case could be controlling in any way here, and indeed it was not referred to in the prevailing or dissenting opinions below. The rationale of the decision in the *Lindgren* case may be found in two paragraphs of the opinion and we can have no quarrel with what was actually determined there for it is ancient law that one is not entitled to a writ of mandamus unless he can show a clear legal right, and that, in the absence of such a showing, the court may properly deny relief as a matter of discretion. (*People ex rel. Lunney* v. *Campbell,* 72 N. Y. 496, 499; *Matter of Dederick,* 77 N. Y. 595; *Matter of Black* v. *O'Brien,* 264 N. Y. 272.) That was all we decided in *Matter of Lindgren,* for we did not affirm the order below but dismissed the appeal. These are the two paragraphs on pages 65 and 66:

" How can a man who has been deprived of all his civil rights and all authority and powers comply with these provisions of the Election Law? In view of the development of our election laws, of the many details covered by it and the public expense involved,

it surely cannot be contemplated that a prison convict can be a nominee when he cannot hold the office if elected. It is reasonable to suppose that if persons participating in the nomination at the primary or by independent nomination must be those qualified to vote on election day, the nominee should be one qualified to hold office if elected.  *  *  *

" Even if some may disagree with me in my views of this matter, yet we are all agreed that when it appeared to the Special Term or the Appellate Division that the two nominees were incarcerated in a state prison for a felony and that their terms extended beyond election day, *these courts in the exercise of discretion could deny the application for a writ of mandamus* compelling the board of elections to place their names upon the official ballot." (Emphasis supplied.)

Whatever question of discretion there is in the instant case was resolved by the Appellate Division in favor of Wiltse, just as was done in *Matter of Lindgren* (*supra*).

Even in the *Lindgren* case the court was careful to point out that those who wished to write in the name of the proposed candidates were not disfranchised. The voters had the right to vote for such candidates but the public officials would not be *compelled* to operate expensive election machinery in their favor and for their benefit. Under the proposed decision here, even those are disfranchised who wish to write in the name of this thoroughly honorable citizen, the present District Attorney of the county, and thus vote for him as County Judge.

As a part and consequent of the statutory provisions affecting primaries, the people, through the Legislature, enacted that if the one selected in the primary died before the general election, the County Committee of the party which had nominated him should select a substitute. That was accomplished here strictly in accordance with the statute. When Judge PHILLIPS died, Mr. Wiltse was selected in his place by the County Committee to run for election as County Judge. Mr. Wiltse as we have seen, had already been selected in the primaries by the Republican party to run for District Attorney and it is true, as we were told on argument, that he offered to, and still wishes to, withdraw as a candidate for that office but no statute required him to do so. All that is provided by statute is that such candidate " may " decline nomination. That is a matter solely for the consideration

of the candidate. The people-electors have the right by their votes to select in the primaries the same man to run for two offices, compatible or incompatible, and there is no statute forbidding it. As soon as we realize that, it is apparent that we must affirm here. The electors may also elect the same man to two offices. If the offices are incompatible, the one elected may not hold both. By taking his oath of office as to one, he leaves the other vacant. The office abandoned is not then filled by the runner-up at the general election but by the executive — the Governor — as the people-electors have also duly provided. There is no *ineligibility* for either office to which the individual has been elected. The statute merely provides that he may not hold both. The last paragraph of the opinion of O'BRIEN, J. (*People* v. *Purdy*, 154 N. Y. 439, 443), indicates that our court had clearly in mind that only those *not under legal disqualification when voted for* could be selected by the voters and that that was the rule to be applied. Since there is no legal disqualification here of Mr. Wiltse from holding the office of County Judge, the rule laid down by our court in the *Purdy* case, as the better rule, has no application here. This is made abundantly clear by the concluding paragraph of our opinion in the *Purdy* case:

" The statute, we think, does not contemplate that a person who is disqualified to hold the office may, nevertheless, be lawfully elected upon the chance that subsequently he may, by his own act, or by the happening of some event, remove the disqualification, and thus become entitled to fill it. The better rule is that the electors, in making the choice, must be confined to the selection of such persons only as are not then under any legal disqualification to exercise its powers and perform its duties. The electors can then know that when the choice is made and legally declared the object for which the election was held has been accomplished, and that there is no legal obstruction in the way to prevent their will, as thus expressed, from becoming effective."

The care with which the statute has been worded shows clearly how inapposite is the *Purdy* case. (*People* v. *Purdy*, 154 N. Y. 439, *supra*.) In that case we properly held that Purdy was disqualified in his capacity of a *candidate for election* as well as to the *holding of* the office of supervisor of a town because the

statute provided that " no trustee of a school district *shall be eligible to the office of supervisor* " of any town in this State. (P. 441; emphasis supplied.)

On the other hand, as indicating that we construed the legislative intent in *People* v. *Purdy* (*supra*), solely because of the statutory words, we later decided squarely to the contrary of appellant's contention here in *People ex rel. Miller* v. *Mynderse* (140 App. Div. 789, 791, affd. 201 N. Y. 524). There the trustee of a village was elected president of the village on March 15th. The term of office of president was to commence on March 21st at noon. Prior thereto but after his election as president the trustee resigned his office as trustee but the outgoing president of the village refused to permit relator to enter into the office of president, claiming that he was not *eligible* and that his alleged election was void. Section 42 of the Village Law was entitled " Eligibility to office " and, *inter alia,* provided insofar as here applicable: " A person shall not *hold* two village offices at the same time except * * *." (Emphasis supplied.) It seems to me that KELLOGG, J., used language decisively applicable here, as follows (140 App. Div. 789, 791): " But the clause quoted does not in terms purport to relate to the capacity of being chosen, and does not refer to the choosing, but in terms is clearly to prevent the same person from holding two offices at the same time. It relates in terms and spirit to the situation of the officer, not on election day but on the day when he enters into the performance of his duties. If on that day he is holding another office, qualifying for the second office presents an apparent violation of the statute and probably *ipso facto* vacates the position formerly held by him, or prevents him from legally qualifying for the new position until he has abandoned the old." SMITH, P. J., dissented in a brief opinion because he was unable to distinguish the case from *People* v. *Purdy*. We affirmed without a dissenting vote. That case is controlling here and should end all question of the eligibility of Mr. Wiltse to run for County Judge.

The Attorney-General of our State as late as 1933 (in 48 N. Y. St. Dept. Rep. 192), in an informal opinion to the Commission of Elections, Goshen, Orange County, wrote that one who was nominated for alderman in the primaries of both the Republican and the Democratic parties might thereafter be designated

by the Republican city committee of Middletown for the office of Mayor, following the death of one who had been nominated for Mayor in the Republican primaries, in default of some special charter provision of the city of Middletown preventing his being a candidate for both offices at the same time. This is in accord with the result reached in another jurisdiction in which the question has arisen. Thus, in *Misch* v. *Russell* (136 Ill. 22, 31 [1891]) the court said: " We know of no rule of law which prohibits a man's becoming a candidate or being voted for at the same election for two incompatible offices, but undoubtedly, if he should be elected to both, he would be incapable of discharging the duties of both offices, and would be compelled to elect which to accept. If, for example, a man should be voted for at the same election for county judge and sheriff, no one, we presume, would insist that the votes cast for him by one portion of the voters for one office would be invalid because another portion of the voters saw fit to vote for him for the other. If then different voters may vote for him at the same election for different and incompatible offices, we see no reason why a particular voter, if he chooses so to do, may not vote for him for both offices at the same time. Such manner of voting creates no uncertainty or ambiguity in his ballot, the intention to vote in that way being capable of just as clear and certain an expression as would be an intention to vote for different candidates for the two offices.''

In conclusion I may say that the case was argued before us from the standpoint of the rights of candidates seeking public office. I think that is the wrong approach. The only questions which should be considered are the rights of the electors. Mr. Wiltse is lawfully on the ballot as a candidate for County Judge and, in my judgment, no court has the power to write additional legislative provisions so as to deprive an elector of the right to vote for a party candidate, lawfully nominated, for any office the elector desires. That is disfranchisement *pro tanto* of the party members and if it is to be done should be done through the Legislature. For these reasons I vote to affirm.

LEWIS, FULD and FROESSEL, JJ., concur with DYE, J.; CONWAY, J., dissents in opinion; LOUGHRAN, Ch. J., and DESMOND, J., taking no part.

Order reversed, etc.