139 So.2d 879 (1962)
STATE of Florida ex rel. Jim FAIR, Relator,
v.
Tom ADAMS, As Secretary of State of the State of Florida, Respondent.
No. 31436.
Supreme Court of Florida.
April 11, 1962.
*880 Jim Fair, relator, in pro. per.
William J. Roberts, Tallahassee, for respondent.
ROBERTS, Chief Justice.
The instant case is before us upon an original petition for writ of mandamus, wherein the relator, Jim Fair, complains that the respondent, Secretary of State of the State of Florida, has refused to accept and file two sets of candidate qualification papers which relator attempted to file.
From the petition it appears that the relator duly qualified as a candidate in the 1962 Democratic Party primary for the state office of Railroad and Public Utilities Commissioner, Group 2, by filing the requisite qualification papers and fees with the respondent. Without first withdrawing this qualification for candidacy, the relator attempted to qualify in the 1962 Democratic Party primary as a candidate for State Senator of the 34th District, and as a candidate for State Representative, Hillsborough County, Group 1. Respondent refused to accept and file the latter two sets of documents and as a consequence of said refusal this controversy arose.
The controlling question presented herein is, may a person submit his candidacy in the same primary election for more than one office in this state?
An examination of the constitution, as well as the statutory and case law, of *881 Florida reveals no definitive answer to this query. However, Article XVI, Section 15 of the Constitution of the State of Florida, F.S.A., and Section 99.021(1) (f), Florida Statutes, F.S.A., do form a basis for the ultimate conclusion that multiple candidacies are not consistent with the public policy of this state.
Article XVI, Section 15, of the Florida Constitution provides in pertinent part, "* * * no person shall hold, or perform the functions of, more than one office under the government of this State at the same time;". (Exceptions not here involved.)
Relator agrees that Article XVI, Section 15 of our constitution would prevent him from holding more than one of the offices to which he aspires, nevertheless, he contends that neither the constitution nor the statutory law precludes a man from seeking multiple offices.
In addition to the constitutional prohibition against holding multiple offices in the government of this state, Section 99.021, Florida Statutes, F.S.A., which sets forth the form of oath a candidate must make, provides in part:
"(1) Every candidate for nomination to any office is required to take and subscribe to an oath or affirmation in writing, in which he shall state
* * * * * *
"(f) That he is qualified under the laws of Florida to hold office for which he desires to be nominated;".
In his argument before this court, relator contended that if an elector cannot lawfully qualify for a political party's nomination as a candidate to run for more than one office, then it must follow that an elected official cannot qualify for his party's nomination to become a candidate for another office so long as his incumbency continues.
It becomes necessary, in order to point out the fallacy of relator's position, for us to divert our attention, for the moment, from the real question presented herein.
This court held in Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41:
"The statutory requirement that a candidate shall make oath `that he is qualified under the constitution and laws of Florida to hold the office for which he desires to be nominated' has reference to qualifications applicable when elected and the term of office begins. State ex rel. [sic] v. Haskill, 72 Fla. 176, 72 So. 651." (Emphasis supplied.)
This construction of Section 99.021(1) (f), Florida Statutes, F.S.A., disposes of relator's contention with reference to an incumbent's becoming a candidate for another office, if the term of office which he is filling expires before the term of office, attendant upon the position which he seeks, begins.
The question then arises, can an office holder become a candidate for another office if the "term" of that office begins before the "term" of the office which he holds expires?
It is not difficult to answer this query. An incumbent may qualify as a candidate for an office other than the one he is currently holding because he can make a truthful oath as required of him by Section 99.021(1) (f), Florida Statutes, F.S.A., by resigning before entering upon the duties of the office to which he might be elected. He would make only one oath, for he would be seeking only one party nomination and one office. Consequently no confusion would be created in the minds of the electors as would be the case were he soliciting multiple nominations.
It must be borne in mind that we are dealing herein with the right of an elector to qualify for nomination by a political party as its candidate for multiple offices. The pivotal point in the instant suit arises by virtue of the fact that relator wishes to seek multiple nomination for offices and apparently is willing to make oath that he *882 will be qualified to fill all the offices to which he might be elected, knowing full well that he could hold but one of such offices.
It is our opinion that a candidate who can, if nominated and elected, fill but one state office at a time, cannot make a truthful oath on every application to become a candidate for nomination to several state offices to the composite effect that he is qualified to hold them all.
This court cannot sanction any such inconsistent statements. It might be said that relator could fail to take the oath of office in, or repudiate, all but one position to which he had been elected and thus become eligible to fill the one of such offices which he might choose to accept. Such procedure would not, however, render truthful those oaths which were impossible of performance when they were taken. Moreover, they would be misleading to the electors and productive of vain effort and fruitless labor, by supporters and campaign workers.
We believe that the observations and conclusions thus far made and reached herein are sufficient to dispose of relator's specious, although ingenious, argument.
Because of the absence of any constitutional provision, statute or case law in this state dealing directly with the question presented here, we must turn for assistance to the decisions of courts in some of our sister states and consider their conclusions and the reasons given therefor.
The courts of final appellate jurisdiction in the states of New York, Oklahoma and Texas have held that a person may not be a candidate in the same primary election for more than one office.
A brief analysis of such decisions is helpful:
Riley v. Cordell, 1948, 200 Okla. 390, 194 P.2d 857.
Supreme Court of Oklahoma, although finding no statute expressly forbidding an elector from becoming a candidate for more than one office at the same primary election, held that statute requiring elector becoming a candidate for office to file declaration containing stipulation that candidate will accept such nomination and will qualify for office, precluded an elector from becoming a candidate for nomination for Justice of Supreme Court and for United States Senator. The court further held that the filing by the elector of a verified notification and declaration of candidacy, in due form, for nomination for office of U.S. Senator had effect of withdrawing his prior notification and declaration of candidacy for office of Justice of the Supreme Court, and that mandamus would lie to compel recognition by state election board of the second filing.
Burns v. Wiltse, 1951, 303 N.Y. 319, 102 N.E.2d 569.
New York Court of Appeals, although finding no specific constitutional or statutory authority prohibiting or permitting nomination of same person as a candidate for office of District Attorney and County Judge at same election, held that spirit and intent of election law prohibited such dual nomination particularly where candidates may not, if elected, take and hold both offices. The court pointed out that election machinery, which is run at great public expense, is for the purpose of doing useful and not useless things, and therefore an eligible nominee should be one qualified to take and hold office if elected.
Williams v. Huntress, 1954, 153 Tex. 443, 272 S.W.2d 87.
Supreme Court of Texas held that nominee could not be the party candidate for both the County Court of Law and for Judge of the District Court. (Note  Constitution and election laws of state prohibited holding more than one office.)
It is noteworthy that the Supreme Court of Oklahoma, supra, ruled that a candidate might, during the period allowed for qualification, file papers required of him to become a candidate for a party *883 nomination for a different office than the one for which he had previously qualified but that upon the filing of the second application his first qualification would be considered as withdrawn and hence of no further force and effect.
The courts of final appellate jurisdiction in Nevada, Missouri and Illinois have declared that in the absence of a law prohibiting an elector from seeking nomination for more than one office, any such person might become a dual candidate.
In the Nevada case, Kelly v. Reed, 1960, 76 Nev. 389, 355 P.2d 969, the court observed that a statute existed at one time which prohibited the nomination of a single candidate, for more than one office. However, such statute had since been repealed and the court reasoned that such repeal had the effect of changing the public policy of the State of Nevada upon the subject. It was then held that a statutory or constitutional provision precluding one person from filling two offices simultaneously does not preclude a candidate from seeking or accepting nomination for more than one office in the absence of some statutory prohibition. This decision is not helpful because it was predicated, as aforestated, upon an obvious change in the public policy of Nevada.
In the case of State ex rel. Neu v. Waechter, 1933, 332 Mo. 574, 58 S.W.2d 971, the Supreme Court of Missouri points out that the elector who desired to seek the nomination for the office of alderman and for mayor actually filed a withdrawal of his candidacy for alderman before he filed his candidacy for mayor.
The Illinois court made no reference to any statute of that state when, in Misch v. Russell, 1891, 136 Ill. 22, 25 N.E. 528, 12 L.R.A. 125, it held that it knew of no law prohibiting an elector from becoming a candidate for two incompatible offices at the same time.
Upon a thorough consideration and careful analysis of the opinions aforementioned, which emanate from other jurisdictions, we have concluded that we should adopt the view which was taken by the New York Court of Appeals in Burns v. Wiltse, 1951, 303 N.Y. 319, 102 N.E.2d 569, and reaffirmed in O'Neill v. Slater, 1957, 3 N.Y.2d 910, 167 N.Y.S.2d 928, 145 N.E.2d 873
In the Burns case, supra, the New York court, in a very persuasive and well-reasoned opinion, stated:
"Even though there was nothing in the Election Law prohibiting such nomination, we nonetheless held that such persons were ineligible on the general principle that an eligible nominee should be one qualified to take and hold office if elected, for, in the words of Crane, J., it does `seem reasonable to suppose that the election machinery, which is run at such a great expense to the public, is for the purpose of doing a useful, and not a useless thing.' Matter of Lindgren, 232 N.Y. 59, 64, 133 N.E. 353, 354, emphasis supplied. In other words, an election under such circumstances would be a futility. The principle thus enunciated is particularly apt in the present controversy. Wiltse, as a dual candidate, may not legally qualify for both offices  one or the other must be abandoned but which one would depend upon the whim and option of the candidate without reference to the will of the people who voted for him."
In other words, the candidate would determine the office for which he deems himself best qualified and the electors' votes as to the discarded offices would be frittered away. "They ought to have the right to express a choice as between candidates who are willing to assume the duties of office if elected." Riley v. Cordell, supra.
Although neither our constitutional prohibition nor statutory oath requirement expressly precludes a candidate from seeking numerous offices "under the government *884 of this state," yet, in view of the fact that they specifically prohibit holding multiple offices they do show the futility, not to say frivolity, of multiple candidacies and, therefore, reflect the fact that such candidacies are contrary to a sound public policy.
If a person should be permitted to seek his party's nomination for more than one state office, there would be nothing to prevent him from seeking nomination for all offices on the state level for any one of which he might possess the requisite qualifications. It might be said that no one could possibly be nominated and elected to all offices within the gift of the people. To be sure, such an unusual occurrence is highly improbable. However, primary nominations to any given number of offices, more than one, would create a chaotic condition in, and confuse the election machinery of this state.
When an elector decides to become a candidate and takes the oath prescribed by Section 99.021(1) (f), Florida Statutes, F.S.A., he should be held to have represented to the electorate not only that he is qualified to fill, but also that if successful in his bid will fill the office which he seeks at their hands. We do not deem it essential that there be any statute so providing. Such intent is implicit in his declaration and the statutory oath required to be made by each and every candidate.
We quote with approval the Oklahoma court when it said:
"* * * the voters have a right to expect one seeking their suffrage to qualify and fill the office he seeks. The construction urged by the Attorney General, that no person should be permitted at the same primary election to be a candidate for nomination for two or more offices when he may fill but one, is reasonable, sensible, and in keeping with the public policy of this state. As was said in State [ex rel. Van Alstine] v. Frear, 142 Wis. 320, 125 N.W. 961, 969, 20 Ann.Cas. 633, `The contention that to require a candidate to declare that if nominated and elected to an office he will qualify adds a qualification not required by the Constitution, we regard as untenable. It is hardly making a qualification to require a man to say that if the people see fit to nominate and elect him he will serve. The electors have the right to know whether he will or not; otherwise, if he should decline, their votes will be thrown away. * * *" Riley v. Cordell, 194 P.2d 859.
We are further buttressed in our view by the decision of this court in State ex rel. Attorney General v. Hill, 116 Fla. 835, 156 So. 891. There, in an original proceeding in quo warranto, an attack was leveled against the title to office claimed by a group of city councilmen. The ballot contained the names of seven candidates under the following heading:
"For two year term Vote for four".
The same ballot contained the names of the same candidates under the column headed:
"For unexpired terms of P.W. Miles and Roy King, Vote for two."
It was contended that the ballot was so vague and indefinite that the voter could not intelligently indicate his choice. Three members of the court held that the ballot was not sufficiently confusing to justify a conclusion that it was invalid. However, these three did concede that if the ballot were construed as authorizing a voter to vote for the same candidate for two offices, the terms of which would run concurrently, then the effect would be that the voter would thereby cancel or neutralize his several votes.
Three other members of the court, there being then only six justices, expressed the unequivocal view that the ballot was illegal but that it could not be questioned in a proceeding after the election was held. These three judges therefore concurred in *885 the judgment to quash the writ of quo warranto.
It seems to us that this precedent out of our own court supports the conclusion that a ballot which contains the name of the same individual as a candidate for several offices, the terms of which would be concurrent, is not only confusing to the point of being unintelligible, but it produces a situation whereby a voter, by voting for the same man for several offices, would neutralize his own vote. We agree with those justices who held in State v. Hill, supra, that such a ballot is illegal.
We think though that in all fairness a candidate, who has qualified to become a political party's nominee for a certain office, should have the right to change his mind and thereafter qualify, during the period fixed by law for qualification of candidates, for selection by his party as its nominee for a different office. However, as a condition precedent to such action he should be required to withdraw or abandon his original or prior qualification for candidacy in the primary election.
After relator's first set of qualification papers was duly filed and accepted, the respondent was under no clear legal duty to accept filings for other offices from the same candidate absent a specific revocation and withdrawal of the first candidacy by the relator.
The writ of mandamus issued herein is hereby quashed and the petition dismissed.
It is so ordered.
TERRELL, THOMAS, DREW, THORNAL and CALDWELL, JJ., concur.
O'CONNELL, J., concurs specially.
O'CONNELL, Justice (concurring specially).
I concur in the order of quashal because in my opinion the relator has not proved a clear legal right to the relief sought.