WILLIAM MISCH

*v.*

HORACE RUSSELL.

*Filed at Ottawa January 22, 1891.*

1. ELECTIONS—*contested election—as to school officers—jurisdiction of county court—the statute construed.* County courts are vested by law with jurisdiction to try and determine all contested elections of school officers.

2. The act of April 3, 1872, in regard to elections, after appointing proper tribunals before which contests may be had of the election of certain officers named, provides that "the county court shall hear and determine contests of election of all other county, township and precinct officers, and *all other officers* for the contesting of whose election no provision is made." This, it is *held*, includes contests of the election of school officers, such officers being of the same class as county, city and township officers.

3. SAME—*ballot for the same person for two offices which are incompatible.* One may become a candidate and be voted for on the same ballot for two incompatible offices, but if elected to both he will be compelled to elect which office he will accept. The fact that he is voted for for two incompatible offices will not authorize the rejection of the ballots on the ground of uncertainty.

4. So where a candidate for the office of president of a board of education had some votes cast for him both for that office and also for the office of member of the same board, it was *held*, that he was entitled to have such votes as were cast for him for president of the board, counted for him.

5. STATUTE—*rule of construction.* The rule for the construction of statutes, that a general description following a specific enumeration of objects or things will be held to include only such things or objects as are of the same kind specifically enumerated, does not require the rejection of the general terms entirely. Every part of a statute should, if possible, be upheld, and given its appropriate force and effect.

APPEAL from the County Court of Iroquois county; the Hon. ALEXANDER L. WHITEHALL, Judge, presiding.

Messrs. KAY, EUANS & KAY, for the appellant.

Mr. FREE P. MORRIS, for the appellee.

Mr. Justice Bailey delivered the opinion of the Court:

This was a proceeding brought by William Misch, in the County Court of Iroquois county, to contest the election of Horace Russell to the office of president of the board of education of school district number 2, township 25, north, of range 12, west, in said county. The petition alleges that said Misch is a resident of said school district, over the age of twenty-one years, and able to read and write the English language; that on the 19th day of April, 1890, an election was held in said school district for the purpose of electing a board of education, to consist of a president and six members, as provided in section 1, article 6, of the "Act to establish and maintain a system of free schools," approved and in force May 21, 1889; that at said election there were cast at least 212 votes; that the result of said election, as declared by the judges thereof, gave to said Russell 96 votes and to said Misch 95 votes for the office of president of said board of education, and that said Russell was thereupon declared by said judges elected to said office; that said Russell did not in fact receive a majority of the votes cast at said election for said office, but that said Misch did receive a majority of said votes and was actually elected; that there were cast at said election not less than ten ballots which were not counted by said judges; that said ballots were headed: "For President, William Misch," and thereunder, among the names of the candidates voted for as members of said board there also appeared the name of said Misch; that said judges did not count any of said last mentioned ballots, and that if said ballots had been counted for said Misch as president of said board, he would have received a majority of all the votes cast for that office and would have been declared elected thereto.

Said Russell appeared and answered, alleging that said County Court had no jurisdiction of the subject matter of said petition or power to hear and determine the matters therein

set forth, but admitting that said Misch was properly qualified to be elected to and hold the office of president of said board of education; that an election was held in said school district as alleged in said petition, and that at said election about 212 votes were actually cast; that the judges of said election counted 96 votes in favor of said Russell and 95 votes in favor of said Misch for the office of president of said board, and declared said Russell elected to said office; that at said election there were cast about ten ballots in which it appeared that the voters had voted for said Misch for president of said board and also for a member of said board; that said judges held that, inasmuch as said Misch could not hold both of said offices, they being incompatible with each other and contrary to the spirit and intention of said act, they, the said judges, did not have the power to discriminate as to which of said offices they should count said votes for, did therefore reject them altogether, and thereupon declared that said Misch had received 95 votes for said office and that said Russell had received 96 votes therefor, and that said Russell was elected to said office. The answer alleges that said president and the members of said board declared elected afterward met and organized as required by law.

The cause being heard on petition and answer, the County Court held that it had no jurisdiction of the subject matter of said contest, and for that reason dismissed the petition. From that judgment the petitioner has appealed to this court.

The first question then to be considered is, whether the County Court decided correctly in holding that it had no jurisdiction. The act of April 3, 1872, in regard to elections, after providing proper tribunals before which contests may be had of the election of Governor and other State officers, members of the Senate and House of Representatives, judges of the several courts and some other officers, provides in section 98 as follows: "The County Court shall hear and determine contests of election of all other county, township and precinct

officers, and all other officers for the contesting of whose election no provision is made." It is claimed that, by the canon of construction usually indicated by the phrase *ejusdem generis,* the words "all other officers;" as used in said section, must be limited to other officers of the same grade or class of those specifically mentioned, and that such construction necessarily excludes the officers of school districts.

It certainly can not be held that all officers who are not county, township or precinct officers are excluded, because that construction would render the words "and all other officers for the contesting of whose election no provision is made" wholly meaningless and of no effect. The contesting of the election of all county, township and precinct officers is already provided for, and the last mentioned clause therefore, unless it is held to embrace officers who are not county, township or precinct officers, is wholly without force or meaning.

By the application of the maxim *ejusdem generis,* which is only an illustration or specific application of the broader maxim *noscuntur a sociis,* general and specific words which are capable of an analogous meaning being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general. Endlich on Interpretation of Statutes, sec. 400. But it has never been supposed that the rule required the rejection of the general terms entirely, but only that they should be restricted to cases of the same kind as those expressly enumerated. *State* v. *Williams,* 2 Strobhart, 474. On the contrary, it must yield to another equally salutary rule of construction, viz, that every part of a statute should, if possible, be upheld and given its appropriate force.

The cases to be found in the reports in which the rule under consideration has been applied are numerous, but the following will be sufficient for purposes of illustration. In *Renick* v. *Boyd,* 99 Pa. St. 555, a statute giving a remedy by replevin to recover timber, lumber, coal or other property severed from

the realty, was held to include articles of the same generic character as those already mentioned, such as slate, marble, iron ore, zinc ore, and all other forms of minerals and ores, building stone, fixtures and machinery of every description which had been permanently affixed to the realty, but that it did not apply to growing crops. The generic or family characteristic by reason of which these several species of property were held to be included within the same *genus* as those specifically enumerated was, that of being permanently affixed to the freehold, while growing crops were only ephemeral and never intended to become permanently affixed, but to be removed from the freehold at maturity. In *Queen* v. *Dickinson,* 7 Ellis & Black, 831, a municipal by-law which imposed a penalty for causing obstructions in the streets in various specified ways, all temporary in their character, and for causing or committing "any other obstruction, nuisance or annoyance" in any of the streets, was held not to include, under the general words, a permanent obstruction, the general characteristic by which the class of nuisances embraced within the general words was distinguished being, that which was common to those specifically mentioned, viz, their being merely temporary.

In *Wanstead Board* v. *Hill,* 13 C. B. (N. S.) 479, a statute prohibiting the establishment, without license, of the business of a bone-boiler, blood-boiler, fellmonger, slaughterer of cattle, horses, or animals of any description, soap-boiler, tallow-melter, tripe-boiler, or other noxious or offensive business, trade or manufacture, was held not to include under the final general terms, any employment not connected, as all the specified trades were, with animal matter, and so did not include the business of brick-making.

In *The Matter of Swigert,* 119 Ill. 83, the question was whether a certain grain elevator belonging to the Illinois Central Railroad Company was exempt from taxation under the provisions of the charter of said company. The case therefore was one calling for a strict rule of construction. In deter-

mining whether the grain elevator came within the classes of property exempted from taxation, construction was given to the first section of the company's charter which gave the company power "to purchase, hold and use all such real estate and other property as may be necessary for the construction of its railway and stations, and other accommodations as may be necessary to accomplish the objects of its incorporation," and it was held to be the well settled doctrine that, in construing statutes, particularly those requiring a strict construction, a general description, following a specific enumeration of objects or things, will be held to include only such things or objects as are of the same kind as those specifically enumerated. In applying that principle to the section above quoted, it was held that said section did not include a grain elevator, as that had no direct connection with the railway or its operation, yet, without attempting to state the various "other accommodations" which may be held to be *ejusdem generis* with the company's "railway and stations," it was said that such general description would clearly include the road, with all necessary switches and turn-outs, together with all structures thereon; also rolling stock, with all its machinery and appendages, warehouses and other structures, at the termini or along the line of the road, belonging to the company and used by it exclusively for the reception of passengers, the storage of freight, and also for the purpose of keeping the road and rolling stock in repair, or of improving their general condition, including all necessary depot grounds and buildings, machine and work shops of all kinds, machinery, tools, and implements of every description used in keeping the road and rolling stock in repair and in good and safe condition, together with whatever would be necessary to increase the capacity of the road, such as laying down an additional track or increasing the amount of rolling stock. All these were said to be included, upon the principle that they had an immediate connection with the improvement and operation of the road. Without adopt-

ing what is said in the case last cited as being in all respects a proper exposition of the clause of said charter then under consideration that as well as the others above referred to may be fairly illustrative of the rule for the construction of the statute here under discussion.

In construing the statute before us in the present case, we have to determine whether the officers of counties, townships and precincts belong to a genus or class which also includes the officers of school districts. Counties, *school districts* and precincts have one quality or characteristic in common and one only, viz, they are all *quasi* municipal corporations, and this quality or characteristic they also hold in common with school districts. There is no legal classification which will include the first three which will not also include the last. As the corporations themselves all belong to the same class, there is no reason for holding that the officers of the three species of *quasi* municipal corporations particularly mentioned are not *ejusdem generis* with the officers of school districts which are only another species of the same class of corporations. It would seem clear then that under any reasonable application of the canon of construction we are now considering, the officers of the latter class of corporations should be held to be included in the general description, "all other officers," that is, "all other like officers," for the contesting of whose election no provision is made.

What we here say is intended in no way to conflict with the rule laid down in *Brush* v. *Lemma,* 77 Ill. 496. In that case the same section of the statute in relation to Elections was under consideration, and it was held that no jurisdiction was thereby conferred upon the County Court of a proceeding to contest the election of the mayor of a city incorporated under a special charter. A city is a municipal corporation properly so called, and is therefore a corporation of an entirely different class, organized for different purposes, and possessing powers and subject to liabilities essentially different from those which

obtain in case of counties, townships, school districts and other *quasi* municipal corporations. It would therefore be much more difficult to hold that cities are corporations *ejusdem generis* with counties, townships and precincts, than to give school districts that classification. We would be understood as expressing no opinion as to the soundness of the conclusion reached in the case last cited, but only desire to say that it does not apply to the facts now before us.

But there is another ground upon which the jurisdiction of the County Court in this case may be sustained. Section 12 of article 3 of the "Act to establish and maintain a system of free schools," approved and in force May 21, 1889, provides for the qualifications of voters "at any school election held under this act," and section 13 provides that "the time and manner of opening, conducting and closing said election, and the several liabilities appertaining to the judges and clerks and to the voters, separately and collectively, *and the manner of contesting said election,* shall be the same as prescribed by the general election laws of this State defining the manner of electing magistrates and constables, so far as applicable, subject to the provisions of this act." While these provisions occur in the article more especially relating to school townships and the election, qualifications and duties of township trustees, they are plainly intended to apply to all elections held under said act, except so far as modified by subsequent provisions establishing different rules. Such is the obvious import of the language used, and this view is corroborated by the further fact that, while in subsequent articles, provision is made for the election of school directors and boards of education, nothing appears in those articles in relation to the qualifications of voters, the liabilities of judges, clerks or voters, or the mode of contesting elections, nor any special rules in relation to the mode of conducting elections, except as to the mere matter of calling and giving notice, the selection of judges and clerks, adjournments under specified circumstances,

and one or two others of minor importance. The general rules governing all elections under said act having been once laid down in said section 13, it was doubtless deemed unnecessary to repeat them in making provision for the election of directors and boards of education.

Magistrates and constables are officers of townships, at least in counties under township organization, and the school law having provided that school elections may be contested in the same manner as is provided by the general election law in case of the election of those officers, viz, before the County Court, clearly vested that court with jurisdiction of proceedings to contest school elections.

It follows from what we have said that the County Court erred in entering a judgment dismissing the proceeding for want of jurisdiction. The material facts alleged in the petition are admitted by the answer, and said court having in its final order found that such was the case, its order is tantamount to a finding that the facts are as alleged in the petition and admitted by the answer. The facts being found, and no dispute arising in respect to them, the legal conclusion or judgment which should follow becomes a question of law. The errors committed by the County Court, and which are open here for review, consist, first, in entering the judgment which was entered, and, second, in refusing to enter the judgment which is the proper legal conclusion from the admitted facts. We may therefore determine upon this appeal what the judgment of the County Court should have been.

The admissions of the answer lead to the inevitable conclusion that, if the votes for Misch for the office of president of said board of education evidenced by the ballots which also contained a vote for him for the office of member of said board were counted in his favor, he would have received a majority of the votes cast and would have been elected to the office of president of said board. The only question is, whether the judges of election properly refused to count those votes in his favor.

The theory upon which their rejection was based, as the answer alleges, was, that the two offices, viz, president and member of the board of education, were incompatible, and could not therefore be both held by the same person at the same time, and that as said judges had no power to determine for which of the two offices the voters casting said ballots intended to vote for him, said votes could not properly be counted for either office, and were accordingly rejected altogether.

We know of no rule of law which prohibits a man's becoming a candidate or being voted for at the same election for two incompatible offices, but undoubtedly, if he should be elected to both, he would be incapable of discharging the duties of both offices, and would be compelled to elect which to accept. If, for example, a man should be voted for at the same election for county judge and sheriff, no one, we presume, would insist that the votes cast for him by one portion of the voters for one office would be invalid because another portion of the voters saw fit to vote for him for the other. If then different voters may vote for him at the same election for different and incompatible offices, we see no reason why a particular voter, if he chooses so to do, may not vote for him for both offices at the same time. Such manner of voting creates no uncertainty or ambiguity in his ballot, the intention to vote in that way being capable of just as clear and certain an expression as would be an intention to vote for different candidates for the two offices.

The judges of election in this case were mistaken in supposing that there was any uncertainty or ambiguity in the ballots in question which needed explanation. The intention of the voters clearly appeared to be to vote for Misch both for president and member of the board of education, and the fact that they saw fit to vote for him for the latter office furnished said judges no excuse for refusing to record in his favor their vote for him for the former. Their intention to vote for him for president of said board appeared clearly and unmistakably

upon the face of the ballots, and said votes should have been counted for him for that office.

Section 58 of the statute in relation to Elections provides that if more persons are designated upon a ballot for any office than there are candidates to be elected, such part of the ballot shall not be counted for either candidate. This statutory provision is founded upon the obvious reason that, the insertion in a ballot of more names than there are candidates to be elected, creates an uncertainty or ambiguity which renders it impossible for the judges of election to select the candidates according to the intention of the voters. In *State* v. *Tierney,* 23 Wis. 430, three persons were voted for for the office of justice of the peace where but two were to be elected, and the court, in holding such ballots void, say: "Three persons are voted for by each voter when only two can be elected. What is the choice of the elector in such a case? It is manifestly impossible to tell. The insertion upon the ballot of a single name more than ought to be upon it, renders it as absolutely uncertain as though a half a dozen or a dozen were inserted. The result is, that such a ballot is void for uncertainty. It fails to express the choice of the elector, and consequently can not be counted as a vote." See also, *People* v. *Loomis,* 8 Wend. 396; *In re Contested Election of School Directors,* 6 Phila. 437; *State* v. *Griffey,* 5 Neb. 161. But it has been held that where a ballot contains the name of the person voted for and the office for which he is designated several times repeated, it is not for that reason void, but is to be counted as one ballot. *People* v. *Holden,* 28 Cal. 124; *Ashfield's Case,* Cush. Election Cas. 583.

The ballots under consideration in this case however do not come within the letter or intention of the section of the Election Law last above quoted. They contain only the proper number of names of candidates for the respective offices, and there is no uncertainty as to the choice of the voters casting said ballots.

The judgment of the County Court will be reversed, and the cause will be remanded to that court with directions to enter a judgment finding and declaring that, at the school election in question, said William Misch received a majority of the votes cast for the office of president of said board of education and was duly elected to that office, and awarding him a certificate of said election.

*Judgment reversed.*