(No. 33545.

THE PEOPLE *ex rel.* Edward F. Moore, Petitioner, *vs.* SIDNEY T. HOLZMAN *et al.*, Respondents.

*Announced February 7, 1955; opinion filed March 24, 1955.*

JOHN F. TYRRELL, and EUCLID LOUIS TAYLOR, both of Chicago, for petitioner.

THEODORE J. ISAACS, and JEROME F. DIXON, both of Chicago, for respondents.

Mr. JUSTICE DAILY delivered the opinion of the court:

Upon leave granted by this court, Edward F. Moore, an elector, resident, and taxpayer of the city of Chicago and chairman of the Republican municipal central committee of that city, filed an original petition for writ of *mandamus* to compel respondents, who comprise the board of election commissioners for the city, to expunge from their records certain papers purporting to nominate one Edward M. Koza for the office of associate judge of the municipal court of Chicago. Respondents answered the petition and to such answer the petitioner filed a general and special demurrer. Thereafter, on February 7, 1955, when the court was reconvened for such purpose because of the urgency

of the issue, oral arguments were heard on the pleadings. On consideration of the pleadings and arguments, we did, then and there, order the writ to issue in accordance with the prayer of the petition, at the same time advising the parties that this written opinion would follow.

The facts from which the legal issues arise show that on November 17, 1954, Honorable Harold P. O'Connell, then a duly qualified and sitting associate judge of the municipal court, resigned and vacated his office. At the time, section 9 of the act relating to a municipal court in the city of Chicago, (Ill. Rev. Stat. 1953, chap. 37, par. 364,) provided as follows: "Vacancies in the office of chief justice or associate judge of the municipal court shall be filled by election at the regular municipal, judicial or other general election which shall occur next after a period of 60 days from the time such vacancies respectively occur, but where the unexpired term does not exceed one year, the vacancy shall be filled by appointment by the Governor." It is undisputed that the unexpired term created by the resignation exceeded one year and that there has been no election since the lapse of sixty days.

The commission then made an announcement that the vacancy would be filled at an election to be held on February 22, 1955, said election being the primary at which nominees are chosen for the office of mayor, city clerk and city treasurer, and at which candidates for alderman, who receive a majority of the votes cast in their wards, are selected for the office. With regard to the election of aldermen in the city of Chicago, sections 21-25 and 21-26 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1953, chap. 24, pars. 21-25 and 21-26,) ordain that "general elections" for aldermen shall be held on the last Tuesday in February of the years provided by law, and, that if a candidate does not receive a majority of the votes cast in any ward or wards, a supplemental election shall be held "the first Tuesday in April next."

Following the commission's announcement, the Republican municipal central committee met for the purpose of selecting a candidate for the vacated judicial office but did not do so because it was concluded that the election of February 22, 1955, was not one at which such vacancy could be filled. The petition alleges that the committee notified respondents that no authority at law existed for holding an election for the office on the February date. Several days later, however, the Democratic municipal central committee met and nominated Edward M. Koza as their candidate for the office and filed a certificate to that effect with the city clerk. This action to expunge Koza's nominating papers from the records of the election board has followed with the main issue being whether the election of February 22, 1955, is a "regular municipal, judicial or other general election" within the meaning of section 9 of the Municipal Court Act.

Because the Revised Cities and Villages Act provides that "General elections for aldermen shall be held in the year or years fixed by law" (Ill. Rev. Stat. 1953, chap. 24, par. 21-25,) and because of the possibility that some aldermen will be elected on that date without the need of a run-off election in April, respondents argue that the election is a "regular municipal election." Petitioner, on the other hand, pointing to the fact that it is possible that no candidate for alderman in any ward will receive a majority of the votes cast for that office, contends that the election is, in every real sense of the word, a primary and not a definitive election even though it is a nonpartisan primary. For this reason, coupled with the fact that the election is definitely a primary election with regard to the offices of mayor, clerk and treasurer, it is the petitioner's conclusion that the election is not a "regular municipal election" as that term is used in the court act. In addition, petitioner argues that the election is not a "general election" within the following definition found in section 1-3 of the Elec-

tion Code: " 'General election' means a regular election for the choice of a national, state, judicial, district or county officer." Ill. Rev. Stat. 1953, chap. 46, par. 1-3.

In entering the order awarding the writ of *mandamus* in this cause, this court arrived at the conclusion that the election in question is clearly not a general election, as such is defined in the Election Code, nor a regular municipal election as contemplated by the Municipal Court Act. Insofar as the election of February 22, 1955, relates to the selection of candidates for the offices of mayor, clerk and treasurer, it is clearly a primary election as distinguished from a general election. It "is an election only in the qualified sense that it is moulded, in general, on the plan of an election and is conducted as an election is conducted, but for the purpose, only, of selecting candidates of a political party, with the right in no one else to participate therein." *People ex rel. Lindstrand* v. *Emmerson,* 333 Ill. 606, 622.

There remains, however, the question of whether the selection of aldermen, and the method of their selection, causes the election to be a "regular municipal, judicial or other general election." While not conclusive or binding, we find the following helpful language in *Norton* v. *Coos,* 113 Ore. 618, 233 Pac. 864: "In determining whether an election is special or general, regard must be had to subject matter as well as date of election and, if an election occurs throughout a state uniformly by direct operation of law, it is a 'general election' but, if it depends on employment of special preliminary proceedings pecular to process which may or may not occur, and the election is applicable only to a restricted area less than the whole state, it is a 'special election'." Under our statute, every aldermanic election is, in fact, a purely local election confined to the ward from which the alderman is to be elected. Aldermen do not run at large against each other, thus each such election is therefore an election for less than the city at large. In addition,

there is the possibility that the election of February 22, 1955, may not be final and thus would be a mere preliminary proceeding. While not strictly a primary election as commonly known, its effect is that of a nonpartisan primary in those wards where no one receives a majority of the votes cast for the office.

Looking to the substance of the statutes relating to aldermanic selection, we agree with relator that it could not have been the legislative intent to convert a city primary and fifty separate aldermanic elections into the "regular municipal" or "other general" election at which the vacancy on the bench of the municipal court could be filled.

The result reached makes it unnecessary to consider a further issue raised by the pleadings. For the reasons stated, we awarded the writ of *mandamus* as prayed.

*Writ awarded.*