JUAN A. VELAZQUEZ *et al*, Appellants, v. JUAN M. SOLIZ *et al.*, Appellees.—CESAREO OLIVO *et al.*, Plaintiffs-Appellees, v. JUAN M. SOLIZ *et al.*, Defendants-Appellants (State Board of Elections, Defendant).

First District (5th Division)   Nos. 86—522, 86—530 cons.

Opinion filed March 13, 1986.

David A. Epstein and Gary A. Weintraub, both of Carroll, Sain & Epstein, Ltd., of Chicago, for appellants Juan M. Soliz and Chicago Board of Election Commissioners.

William A. Von Hoene, Jr., Gabrielle Siegel, and Natalia Delgado, all of Chicago, for appellees Cesareo Olivo, Juan A. Velazquez, and Rosalia Mancera.

JUSTICE MURRAY delivered the opinion of the court:

This case involves two appeals from two decisions of the circuit court in an election matter. Appeal No. 86—522 involves an administrative review action pursuant to provisions of the Illinois Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 10—10.1). In that action, the trial court affirmed an order of defendant Chicago board of election commissioners entered on February 13, 1986, which had overruled plaintiffs Velazquez', Olivo's and Mancera's objections to defendant Soliz' candidacy for alderman of the 25th Ward in the special nonpartisan aldermanic election to be held in that and other wards in the city of Chicago on March 18, 1986.

In the second appeal, No. 86—530, a declaratory judgment action instituted by plaintiffs Olivo, Velazquez and Mancera, the trial court granted plaintiffs' motion for summary judgment, dismissed the Illinois State Board of Elections as a defendant, denied defendant Soliz' motion to dismiss and enjoined defendant Chicago board of election commissioners from printing defendant Soliz' name on the ballot in the Democratic primary election for that political party's nomination for the office of State Representative for the 20th representative district in the 85th General Assembly of the State of Illinois.

Plaintiffs Velazquez, Olivo and Mancera have appealed from the trial court's order affirming the order of defendant Chicago board of election commissioners overruling their objections to defendant Soliz' candidacy for alderman of the 25th Ward.

Defendant Soliz has appealed the trial court's order overruling his motion to dismiss, granting plaintiffs Olivo's, Velazquez' and Mancera's motion for summary judgment and enjoining defendant Chicago board of election commissioners from printing his name (Juan M. Soliz) on the ballot as a candidate of the Democratic Party for the office of State Representative.[1]

For the sake of clarity, this court will hereafter refer to Velazquez, Olivo and Mancera as plaintiffs and Soliz and the Chicago board of election commissioners (the board) as defendants.

The undisputed facts are as follows. On December 30, 1985, the United States District Court for the Northern District of Illinois, Eastern Division, in a case entitled Ketchum v. City Council, Nos.

---

[1]All orders appealed from were entered by the trial court on February 27, 1986.

82 C 4085, 82 C 4431, 82 C 4820 (cons.), entered an order requiring the calling of a special aldermanic election to be held on March 18, 1986, in seven Chicago wards, including the 25th Ward. Defendant Soliz had filed nominating petitions and was certified on January 16, 1986, for nomination for the office of State Representative for the 20th representative district in the Democratic primary election also to be held on March 18, 1986. Soliz had filed his nominating petitions for that office (State Representative) prior to the district court's decision in Ketchum v. City Council, which was announced some weeks after the close of the statutory filing period for the March 18 primary election. The only other Democratic primary candidate for State Representative for the 20th district is plaintiff Olivo.

On January 17, 1986, the day after his certification as a candidate for nomination to the office of representative, defendant Soliz filed his petition of candidacy for alderman in the 25th Ward in the March 18 special aldermanic election. Plaintiff Velazquez is one of Soliz' opponents on the ballot for this special aldermanic election.

Plaintiffs are all residents and voters of the 25th Ward. They filed objections to Soliz' petition of candidacy for 25th Ward alderman and requested that defendant board remove Soliz' name from the aldermanic ballot because he was simultaneously running for State Representative in the General Assembly, which plaintiffs contend is an office incompatible with that of alderman. Plaintiffs also argued that, since Soliz had no intention of serving as State Representative, his dual candidacy would result in a disenfranchisement of the voters for that office.

On February 3, 1986, Soliz filed an affidavit indicating that he does not desire to serve as or remain a candidate for State Representative if he is elected alderman of the 25th Ward. He indicated an intention to resign or to decline to run if nominated as a State Representative candidate. If Soliz makes a declination of the State Representative nomination, if nominated, the Democratic party ward committeemen of the 20th district would fill the vacancy. Plaintiffs allege that this course of conduct would effectively deprive the voters of the 20th district of their constitutional right to choose the nominee for State Representative, and cite Smith v. Cherry (7th Cir. 1973), 489 F.2d 1098, and other cases, as support for this view.

After a hearing, the defendant board on February 13, 1986, determined that sections 7—12(9), 8—9(3), and 10—7 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, pars. 7—12(9), 8—9(3), 10—7), which prohibit filing for incompatible offices, are not applicable to Soliz' candidacies for the following reasons: (1) Soliz has filed only one petition of

nomination (for the Democratic nomination for State Representative); (2) it was impossible for Soliz to withdraw one of two petitions within the requisite period since there were two separate and distinct filing periods relating to different elections; and (3) the aldermanic office does not appear on a primary ballot. Furthermore, the defendant board noted that there are differences in the statutes governing different elections and that there are differences between a primary election and a special nonpartisan election.

Plaintiffs then sought judicial review of the defendant board's decision overruling their objections to Soliz' aldermanic petition under the provisions of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 3—101 et seq.). After the Illinois State Board of Elections declined to consider plaintiffs' challenge to Soliz' state representative candidacy, plaintiffs also filed a declaratory judgment action pursuant to the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—701 et seq.). On February 27, 1986, the trial court entered the final orders, described above, in the respective cases.

We first note that if Soliz does not receive a majority of votes in the March 18 nonpartisan aldermanic election, he will be compelled to run in a supplemental aldermanic runoff election in April 1986.

If Soliz is nominated as the Democratic party's candidate for State Representative in the March 18 primary, he will be on the ballot for the November 1986 general election. If elected alderman, his term would run from the date of certification for the special election in March 1986 or in April, if necessary, and would end in April 1987 when the winner of the 1987 aldermanic election takes office. If elected as State Representative in November 1986, Soliz' term would begin in January 1987. Thus, the overlap between the two terms of State Representative and alderman at issue in this case involves the first few months of the legislative term and the last few months of the aldermanic term (January to April of 1987).

This is an unusual case arising as a result of the United States District Court's decision in the Ketchum case ordering that the special aldermanic election in the seven wards be held on March 18, 1986, the same day as the general Democratic and Republican primary elections. Such a case as this will seldom, if ever, arise again because under the Illinois Election Code the primary and general elections for State Legislators and other offices are held in even-numbered years, while the nonpartisan elections for municipal officers are held in odd-numbered years. Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2.

Plaintiffs initially contend that three provisions of the Illinois

Election Code bar Soliz' dual candidacy for alderman and State Representative. These are sections 7-12(9), 8—9(3) and 10—7. (Ill. Rev. Stat. 1983, ch. 46, pars. 7—12(9), 8—9(3), 10—7.) They relate to (1) the making of nominations by political parties (article 7), (2) the nomination of members of the General Assembly (article 8), and (3) the making of nominations in certain other cases (article 10). Ill. Rev. Stat. 1983, ch. 46, arts. 7, 8, 10.

■■ Illinois courts have held that the right to hold office is a valuable one. The exercise of the right should not be prohibited or curtailed except by plain provisions of the law. Statutes imposing disqualifications should be construed liberally in favor of eligibility, and every doubt must be resolved in favor of eligibility. *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 250 N.E.2d 138.

■■ The Illinois Election Code applies generally to all elections conducted in Illinois, including aldermanic elections. (Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.) A city of Chicago aldermanic election is neither a primary election nor a special election. (*People ex rel. Moore v. Holzman* (1955), 5 Ill. 2d 405, 125 N.E.2d 498.) It is described as a nonpartisan election in the Cities and Villages Act and Election Code. (Ill. Rev. Stat. 1983, ch. 24, par. 21—24 *et seq.*; Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2.) The provisions of section 21—26 of the Cities and Villages Act provide that the candidate for alderman receiving a majority vote at such nonpartisan election shall be declared elected. If no candidate receives a majority vote in the nonpartisan aldermanic election, a supplemental election is provided for by the Cities and Villages Act and the Election Code. (Ill. Rev. Stat. 1983, ch. 24, par. 21-25; Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2(c)(1).) A Chicago aldermanic election is a "municipal election" as defined in the Election Code. Ill. Rev. Stat. 1983, ch. 46, par. 1—3(5).

Section 2A—1.2(c) of the Election Code provides that in municipalities where the candidates for alderman or other municipal offices are not permitted by law to be candidates of political parties, the runoff election where required by law, or the nonpartisan election where required by law, shall be held on the date of a consolidated election. (Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2(c)(1).) This section reads, in part, that "at the consolidated election in the appropriate odd-numbered years, alderman shall be elected in municipalities in which candidates for alderman are not permitted to be candidates of political parties, subject to runoff elections to be held at the consolidated election as may be required by law ***." Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2(d).

The provisions of article 10—3.1 provide that petitions for nomina-

tion of nonpartisan candidates for offices to be filled at a nonpartisan election provided for in section 2A—1 (Ill. Rev. Stat. 1983, ch. 46, par. 2A—1) are required to be in conformity with any requirements as to content and number of signatures specified in the statute creating the political subdivision or providing the applicable form of government thereof.

It is further provided in the Election Code that the provisions of article 10 thereof relating to independent candidates' petition requirements shall apply to nonpartisan petitions to the extent that they are not inconsistent with the requirements of such other statutes or ordinances. Ill. Rev. Stat. 1983, ch. 46, par. 10—3.

Neither party in their briefs or oral arguments have indicated to the court whether the provisions of section 10—7, relating to withdrawal of candidates, are consistent or inconsistent with city of Chicago ordinances, if any, on the subject.

A reading of the relevant portions of the Election Code discloses that sections 7—12(9) and 8—9(3), relied on by plaintiffs in both appeals as disqualifying Soliz' dual candidacy, apply respectively to nominations by political parties and for the General Assembly. They do not expressly or inferentially apply to a nonpartisan aldermanic election. The language of the two sections makes this readily apparent. Section 10—7, also relied on by plaintiffs, applies to the making of nominations in certain other cases, not to a nonpartisan aldermanic election.

Article 7 of the Illinois Election Code, of which section 7—12(9) is a part, is expressly applicable to the making of nominations by political parties. (Ill. Rev. Stat. 1983, ch. 46, art. 7.) Article 8 of the Code, of which section 8—9(3) is a part, is expressly applicable to nominations of members of the General Assembly. (Ill. Rev. Stat. 1983, ch. 46, art. 8.) Article 10, which includes section 10—7, is expressly applicable to the making of nominations in certain other cases. Ill. Rev. Stat. 1983, ch. 46, art. 10.

Each of the three sections of the Election Code reads, in part, as follows:

> "If petitions for nomination have been filed for the same person for 2 or more offices which are incompatible so that the same person could not serve in more than one of such offices if elected, that person must withdraw as a candidate for all but one of such offices within the 5 days following the last day for petition filing." Ill. Rev. Stat. 1983, ch. 46, pars. 7—12(9), 8—9(3), 10—7.

There is a difference in the sanction portion of the three sections. As to the sanction for failing to withdraw, sections 7—12(9) and 8—

9(3) read, in part, as follows:

> "If he fails to withdraw as a candidate for all but one of such offices within such time his name shall not be certified, nor printed on the *primary* ballot, for any office." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 46, pars. 7—12(9), 8—9(3).

On the other hand, section 10—7 reads, as to the result of failure to withdraw:

> "If he fails to withdraw as a candidate for all but one of such offices within such time, his name shall not be certified, nor printed on the ballot, for any office." Ill. Rev. Stat. 1983, ch. 46, par. 10—7.

This difference in wording by inclusion of the word "primary" in sections 7—12(9) and 8—9(3), but not in section 10—7, is significant. The March 18, 1986, election with respect to State Representative and other party nominations is a partisan primary election to nominate the respective parties' candidates for the November 1986 election. The March 18, 1986, election for aldermen is not a primary election. It is a nonpartisan election provided for in section 2A—1.2 of the Election Code. Ill. Rev. Stat. 1983, ch. 46, par. 2A—1.2

■ A full reading of section 10—7 discloses its apparent application only to nominations by minor political parties and groups and not to nonpartisan municipal elections. The section provides for the withdrawal of a person whose name has been submitted as a candidate, and also provides that in the event of withdrawal, "[n]o name so withdrawn shall be printed on the ballots under the party appellation or title from which the candidate had withdrawn his name." (Ill. Rev. Stat. 1983, ch. 46, par. 10—7.) It provides for the eventuality of a candidate's name being submitted on more than one certificate or petition and a failure to withdraw from all but one. It also provides for the filling of the vacancy created by a withdrawal or declaration of invalidity of "independent" candidates for office.

Nowhere in section 10—7 does there appear a reference to nonpartisan candidates even though the legislature could have included in that section its applicability to nonpartisan elections and candidates by inserting the phrase "including nonpartisan candidates" after the words "any person whose name has been presented as a candidate."

As previously stated, Illinois law requires that statutes imposing disqualifications be construed liberally resolving doubts in favor of eligibility. Based on this proposition, and on the above analysis, this court concludes that the defendant board and the trial court correctly determined that the aforementioned provisions of the Illinois Election Code have no application to defendant Soliz' candidacy for alderman

of the 25th Ward in the election to be held on March 18, 1986.

■ The trial court also held that the offices of alderman and State Representative are not incompatible. Plaintiffs argue in appeal No. 86—522 that the trial court erred in overruling their objections to Soliz' aldermanic petition and in holding that the two offices were compatible. They assert that the offices of alderman and State Representative are incompatible under the provisions of the Cities and Villages Act (Ill. Rev. Stat. 1983, ch. 24, par. 21—14) and section 2(e) of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 2(e)). Section 21—14 of the Cities and Villages Act provides that "[n]o member of the city council shall at the same time hold any other civil service office under the federal, state or city government ***." Article IV, section 2(e), provides that "[n]o member of the General Assembly shall receive compensation as a public officer or employee from any other governmental entity for time during which he is in attendance as a member of the General Assembly."

Neither of the above provisions purports to disqualify a person from seeking an elective office. Any question of disqualification would arise only if Soliz attempted to serve both as alderman and as State Representative after his election to both offices. We base this conclusion on *People ex rel. Myers v. Haas* (1908), 145 Ill. App. 283, which involved a situation where a State Senator was later elected to the office of clerk of the municipal court. There, the court found the two offices incompatible because State law specifically prohibited the occupant of one office from holding the other and because the duties of the one office would interfere with those of the other. In determining that the official could not hold both *elected* positions, the court held that by the senator's acceptance of the office of clerk, he voluntarily resigned his senatorship office.

In the case before us, Soliz has not been elected to either of the two offices. We therefore conclude, in light of the above cited authority, that any question concerning the compatibility of the two offices of alderman and State Representative will only arise, if ever, if Soliz is elected to both offices and seeks to serve as both a State Representative and alderman. Accordingly, we hold that the trial court erred in determining the compatibility or incompatibility of the two offices because that issue was not as yet ripe for judicial determination.

■ We next turn to the question of Soliz' ineligibility to be a candidate for State Representative. This question was not raised before the defendant board in appeal No. 86—522. We note, however, that the appropriate administrative agency to consider this question would

not have been the defendant board, but rather the Illinois State Board of Elections. (Ill. Rev. Stat. 1983, ch. 46, pars. 10—8 through 10—10.1.) Indeed, the record discloses that on January 23, 1986, the State Board declined to hear objections submitted by plaintiffs' to Soliz' candidacy for State Representative because the objections were filed over a month after the last day to file nominating petitions for the March 18, 1986, general primary election. Pursuant to the Election Code, the State Board's jurisdiction is limited to hearing objections filed not more than five days after the last day for filing nominating petitions. *Mierswa v. Kusper* (1984), 121 Ill. App. 3d 430, 459 N.E.2d 1110.

■ The plaintiffs have, however, raised the issue of Soliz' ineligibility for the nomination to the General Assembly because of his dual candidacy in their declaratory judgment action on appeal in this court in No. 86—530. To maintain a declaratory judgment action under the provisions of the Uniform Declaratory Judgment Act (Ill. Rev. Stat. 1983, ch. 110, par. 2—701), a case or controversy must exist. (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 370 N.E.2d 1036.) As our supreme court stated in *Howlett*:

> "[A] court [will not] pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. *** The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (69 Ill. 2d 135, 141-42, 370 N.E.2d 1036.)

Since the authority relied upon by plaintiffs on the issue of incompatibility will only arise if Soliz is elected to both offices and attempts to serve in both simultaneously, as previously mentioned above, plaintiffs' action to disqualify him is premature and not ripe for determination by this court at this time.

On this point it is also to be noted that the provisions of sections 4—5 through 4—12 of the Municipal Code of Chicago authorize the city council of the city of Chicago to hear and determine aldermanic election contests and provides at section 4—11:

> "Whenever it shall appear in any case that the person receiving the highest number of legal votes is ineligible to the office because of any legal disqualification, or for such other causes, it shall, for that reason, be the duty of the city council to declare such election null and void, and immediately to call a special election to fill said office."

■ It is also provided at section 4—12 that "[t]he decision of the

city council shall be final as to the election and qualification of any person whose election is contested or who is declared by it to have been elected alderman." Although this ordinance has not been cited by either party, this court, under well settled principles of law, can take judicial notice of the ordinance. *Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 422 N.E.2d 907.

Accordingly, we hold that the trial court erred in granting plaintiffs summary judgment and denying Soliz' motion to dismiss on this issue.

■ Finally, plaintiffs argue that Soliz' continuance as a candidate for State Representative was violative of an "implied promise" to hold office if nominated or elected and that his candidacy is therefore a sham. The trial court agreed, concluding that Soliz' continued candidacy for State Representative was a breach of that implied promise in light of his affidavit indicating he would withdraw as a candidate for State Representative if nominated and if he was elected an alderman. The court found that such an action by Soliz would amount to a disenfranchisement of voters and that removal of his name from the ballot as a candidate for State Representative was necessary to prevent a "sham" or fraudulent election.

There is no Illinois case law holding that a candidate by seeking two offices makes an implied promise to the voters to serve in one or both of the offices. The only oath or promise an Illinois candidate makes is contained in sections 7—10, 8—8 and 10—5 of the Election Code. (Ill. Rev. Stat. 1983, ch. 46, pars. 7—10, 8—8, 10—5.) In not one of the oaths does it appear that the candidate promises to hold office if nominated or elected.

We further note that the cases cited in the trial court on this theory are not Illinois cases, except for *Misch v. Russell* (1891), 136 Ill. 22, 26 N.E. 528, which has since been modified by sections 7—12(9), 8—9(3) and 10—7 of the Election Code. *Misch* involved a school board election in which the defendant ran for both offices of president and member of the school board, concededly incompatible offices. The court, in holding the defendant could run for both offices, stated:

> "We know of no rule of law which prohibits a man's becoming a candidate or being voted for at the same election for two incompatible offices, but undoubtedly, if he should be elected to both, he would be incapable of discharging the duties of both offices, and would be compelled to elect which to accept." (136 Ill. 22, 31, 26 N.E. 528.)

Notwithstanding the fact that *Misch* has been modified by statute, this case supports Soliz' argument that there is nothing illegal or im-

proper in his decision to run for both offices absent a statute or ordinance to the contrary. We further find, as previously mentioned, that the statutes in question are inapplicable to the present case unless, and until, Soliz is elected to both offices.

The trial court also relied on *Smith v. Cherry* (7th Cir. 1973), 489 F.2d 1098, in holding that the effect of Soliz' announcement of an intent to withdraw as a candidate for State Representative, if elected an alderman, was tantamount to a sham on the voters of the 20th representative district. The *Smith* court, in reversing the district court, held that the plaintiffs stated a cause of action under Federal civil rights legislation where they alleged a conspiracy by senatorial committeemen to have an incumbent senator run in a primary election as a "stand-in" candidate and, after his anticipated success in winning the primary, to substitute another candidate by committee vote upon the incumbent's previously arranged withdrawal after the primary.

We find *Smith* distinguishable from the case before us. In *Smith*, there was an alleged conspiracy among the incumbent senator and the committeemen. Here, Soliz frankly has announced his intent to withdraw as a candidate for State Representative if nominated and if he is elected to the aldermanic office. Further, the record does not disclose any evidence of a conspiracy among Soliz and the ward committeemen to have Soliz run as a "stand-in" candidate. Also, in *Smith* the majority of voters would have been unaware of the deception. Here, as indicated during oral argument, the voters are aware of Soliz' dual candidacy. We further note that plaintiffs' allegation, that Soliz illegally intends to transfer electoral authority to the ward committeemen, is without merit. Soliz has no authority to transfer; the committeemen are empowered by statute to select another candidate for State Representative in the event a successful primary candidate withdraws from the election.[2] Ill. Rev. Stat. 1983, ch. 46, par. 7—61.

In light of the above, we therefore reverse the trial court's judgment enjoining the Chicago board of election commissioners from printing Soliz' name on the March 18, 1986, primary ballot.

For the foregoing reasons, the trial court's judgment affirming the Chicago board of election commissioners' decision permitting defendant Soliz' name to be placed on the ballot as a candidate for alderman in the 25th Ward in the special nonpartisan aldermanic election to be held on March 18, 1986, is affirmed. The court's orders ap-

---

[2] It appears that in two of the three wards in the 20th representative district, ward committeemen are also being elected in the March 18, 1986, primary election.

pealed from granting summary judgment to plaintiffs, denying defendant Soliz' motion to dismiss, and enjoining the Chicago board of election commissioners from printing defendant Soliz' name on the ballot as a candidate for State Representative in the Democratic primary election for the 20th representative district in the 85th General Assembly of the State of Illinois to be held on March 18, 1986, are reversed.

No. 86—522—Judgment affirmed.
No. 86—530—Judgments reversed.

SULLIVAN, P.J., and LORENZ, J., concur.